### BROWN v. PERKINS et al.*
### No. 4345.

Court of Appeal of Louisiana. Second Circuit.

Nov. 10, 1932.

Wilkinson, Lewis & Wilkinson, of Shreveport, for appellants.

T. Overton Brooks, of Shreveport, for appellee.

McGREGOR, J.

On or about November 26, 1930, at about the hour of 3 o'clock p. m., the plaintiff was driving his Ford sedan northward on the Shreveport-Benton paved highway. When at a point about five or six miles north of Bossier City, he overtook a loaded truck belonging to the defendant Mrs. W. J. Perkins (now Mrs. O. B. Kidd), and driven by the defendant Hays Rowlins. This truck had been to Bossier City, where it was loaded with cottonseed hulls which were being hauled to Mrs. Perkins' dairy, which was a short distance off the main highway to the left or west. At a point a few hundred yards north of the point where plaintiff came in sight of the truck there is a private road on the west side of the highway, which leads to the Perkins Dairy.

Naturally plaintiff's automobile was a faster traveling vehicle than the truck, so he at once began to make preparations to pass it. In accordance with the provisions of section 14 of Act No. 296 of 1928, the plaintiff drove to the left side of the highway and sounded his horn twice to warn the driver of the truck of his desire and intention to pass. This signal was never heard by the defendant Rowlins. Just when the plaintiff was coming alongside of the truck it was on the extreme right side of the highway and about opposite the entrance of the side road leading over across the railroad to the Perkins Dairy. The plaintiff presumed that the truck was being driven over on the right side of the road in response to his signal, but not so.

It was the intention of Rowlins to turn left across the paved highway into the side road, and for this purpose he had driven to the extreme right side of the road in order to make the turn. In anticipation of this intended turn, and in compliance with the provisions of Act No. 296 of 1928, he had held out his left hand as a signal of his intention. For some unknown reason, probably due to the width of the body of the truck, this signal was not seen by the plaintiff. So that, for all intents and purposes, the situation is the same as though no signal was given either by the overtaking automobile or by the overtaken truck.

From the evidence in the case, the truck was traveling at a rate of about fifteen or twenty miles per hour, while the automobile was traveling about thirty-five or forty miles per hour, so that, in order to pass the truck, provided it had remained on the right side of the pavement, it was not necessary to increase the speed of the automobile.

The plaintiff, thinking that his signal had been received and respected, proceeded to drive forward on the left side of the road in order to pass the loaded truck on the right side of the road. Defendant Rowlins, driver of the truck, was not at any time aware of the presence of an automobile, either in the rear or at his side. He presumed that if one were approaching from the rear its driver had seen his hand signal and would yield to him in his turn across the road. He testified that his truck was equipped with a rearview mirror and that it did not disclose the presence of plaintiff's car in the rear. So, acting on the assumption that there was no danger from an overtaking car, he proceeded to make his left turn into the side road.

While Rowlins was in the act of turning and before his truck had cleared the pavement, plaintiff, in his automobile, came suddenly upon him and it was impossible to avert a collision. Plaintiff made a desperate effort to pass in front of the truck, the front wheels of which had just gotten off the pavement. In this effort he was unsuccessful. His right rear wheel struck the front portion of the truck and his automobile continued on in a northerly direction along the left, or west shoulder of the highway a distance of 50 feet and stopped in the ditch. In this distance it turned over several times. Plaintiff was thrown from the car and seriously injured, and the only wonder is that he was not instantly killed. The truck driven by the defendant Rowlins was only slightly injured. The front axle had to be straightened, and when that was done the truck was in as good condition as it was before. Immediately after the wreck the truck was driven off the pavement and parked on the right of the side road, evidently about the railroad right of way.

The plaintiff brought suit against the de-

fendants for damages in the sum of $15,915. At the trial in the lower court there was judgment for the plaintiff against the defendants in solido in the sum of $1,980. The defendants have appealed, and the plaintiff only asks that the judgment be affirmed.

### Opinion.

This case involves the alleged negligence of the driver of a forward car in making a left turn, and the contributory negligence of the driver of the overtaking car. The lower court found that the driver of the truck was negligent and that the plaintiff was free from contributory negligence.

It is the contention of the defendants that the driver of the truck was not aware of the presence of the plaintiff; that he held out his left hand as required by law and made his left turn. The driver of the truck testified that his truck was equipped with a rear-view mirror which gave him a perfect view of the rear, but that in addition he turned his head around and looked to the rear when he was 30 feet from the side road and saw no one. He says that he then held out his hand and started to make his turn, and that the first knowledge he had of the presence of the plaintiff was when the two vehicles collided.

From the evidence it is certain that at the moment before the truck began its left turn plaintiff was within a relatively short distance behind. Defendants' counsel, in their brief, estimate this distance at between 39.25 and 60 feet. Plaintiff says he was about and nearly even with the truck. In any event, the driver says he did not see him. If his mirror did not reveal him, it did not meet the requirements of the law (Act No. 296 of 1928, § 47) which says that the rear-view mirror must "reflect to the driver a view of the highway for a distance of at least two hundred feet to the rear of such vehicle." If the driver looked outside to the rear he was negligent in not seeing the approaching automobile. If he had seen him where he actually was, the left-hand turn should not have been undertaken until the automobile had passed, for it would certainly be negligence on the part of a driver of a loaded truck to undertake to make a left-hand turn while an automobile was attempting to pass as close by as plaintiff is bound to have been. The fact that the driver of the truck did not see the plaintiff does not relieve him of negligence, for under our law he is supposed to have seen what he ought to have seen. This is so elemental and fundamental there should be no need of citation to support it. In the case of Gibbons v. New Orleans Terminal Co.; 1 La. App. 371, involving a collision between an automobile and a railroad train, there was judgment in the lower court in favor of the plaintiff. In reversing the judgment and dismissing the plaintiff's suit, the court said:

"But plaintiff says that he looked, but did not see any train on the track. That is his fault or his misfortune. The law is not satisfied with a plaintiff looking and not seeing; he must look at such a time and in such a manner as he may see things that he should have seen if he had looked properly."

Counsel for defendants cite the case of Le Boeuf v. Benoit, 3 La. App. 669. The case is very similar to the one now under consideration and supports defendants' position. The plaintiff in that case was the owner of the forward car which made the left-hand turn into the side road. The lower court rendered judgment in favor of the plaintiff and this judgment was affirmed by the Court of Appeal in the First Circuit. The opinion seems to hold that in a case of this kind the only obligation that rests on the driver of a forward car preparing to make a left turn is to hold out his hand in warning of his intention, and that if the driver of the overtaking car, for any reason, fails to see it and runs into the forward car as it is attempting to make the left turn, it is negligence on the part of the overtaking car. In other words, the case seems to hold that there is no obligation on the driver of the forward car either to look back to discover the presence of an overtaking car, or to see and make sure that his signal is seen and becomes effective. In the body of the opinion the following language is used: "Maurice Benoit, driving defendant's car, testifies that he did not see plaintiff's extended arm, and defendant argues from this that when plaintiff started to turn out of the highway into Jenner Street or lane he should have looked behind him, etc. That would have been well, and some automobiles are equipped with reflectors, so the party driving can see an automobile behind him; others are not." We do not know of the facts of the case, but we cannot subscribe to any doctrine that tends to excuse the driver of a car making a left turn from looking both in front and behind and making sure that there are no cars in either direction close enough to interfere with him in making his left turn with safety to himself and all others. In a later case decided by this same judge, he holds the same doctrine that we do, so we feel sure that there were circumstances in the above-cited case that are not quite disclosed in the opinion. The case referred to is that of Marsh v. Singletary, 7 La. App. 436, in which the court said:

"The defendant before swerving across the road, should have looked behind to see if anybody was near, or else should have timely held out his left arm as a signal to anybody close behind him, indicating what he was about to do."

Certainly no one would say that holding out one's left hand without making sure that

it is seen is anything more than a mere idle gesture.

Defendants cite the case of Stevens v. Dean, 6 La. App. 537, decided by this court. In so far as that case lays down the principle that a forward car has the superior right over the car behind it, it is certainly correct. But if it can be construed as absolving the driver of a forward car from looking and making sure before crossing the line of traffic in a highway, we cannot follow it. That case cited the case of Government St. Lbr. Co. v. Ollinger, 18 Ala. App. 518, 94 So. 177, 181. That was a case decided by the Court of Appeals of Alabama in 1922. The case is as much like the one under consideration as two cases can be. The lower court rendered judgment in favor of the plaintiff, and on appeal this judgment was reversed and the case was remanded. In the course of the opinion there is found the following statement, which we cannot accept:

"If the defendant did not know of the approach of plaintiff's car, and, without knowing or being in possession of such facts as would charge him with knowledge, turned shortly across the road for the purpose of entering a side driveway or for any other lawful purpose, without giving a signal to a man whom he did not know and had no reason to believe was approaching, he would not be guilty of actionable negligence."

In the case under consideration the plaintiff sounded his horn, even though the driver of the truck never heard it. But at the time of the sounding of the horn the truck did go to the extreme right of the road, and plaintiff was justified in thinking that this was in response to his signal. As a matter of fact, the turning to the right was in preparation for the left turn to be made the next second. This identical situation arose in the case above cited, and on that point the court held:

"Having given notice by sounding his horn, and seeing defendant immediately turn to the right, plaintiff had a right to act upon the reasonable appearance of things, and to assume that defendant had heard the signal and yielded the right of way."

So it is clear that even the cited case would be authority for absolving the plaintiff herein from the charge of contributory negligence.

Another case relied upon by the defendants is that of Smith v. Clark, 125 Okl. 18, 256 P. 36. That case holds as follows:

"Where two automobiles were travelling in the same direction along a public highway, and the rear car attempted to pass the first one just as it was turning to the left out of the highway, and was injured, the driver of the front car was not guilty of negligence in turning to the left without signaling, if he did not know of the approach of the rear car."

We cannot accept that doctrine. We think the driver of the front car should know of the approach of the rear car if it is close enough to cause a collision when an unexpected left-hand turn is made. If this presence is not made known by some signal from the rear car itself, then it must be discovered in some way by the driver of the front car. The difference between our holding and that of the two cases last above cited, with reference to the front car, is the difference between the doctrine of "the last clear chance," and that of "the discovered peril." In the one, the driver is held responsible for what he could have seen and known and ought to have seen and known, while in the other he is held responsible only for what he actually sees and knows.

Next counsel cites the case of Paul v. Brady, 19 La. App. 37, 139 So. 492, 493, recently decided by this court. That was a collision between a car making a left-hand turn and another one coming from the opposite direction. We held each to be negligent in not looking and seeing the other. In other words, both were guilty of negligence that was continuous up to the very moment of the accident. We said: "If either of them had been keeping a proper lookout, the accident could have been avoided." That case is not parallel with the one under consideration. Here the plaintiff did everything the law requires. He looked and saw the car in front, he gave the signal required by law, and thought it had been received, for immediately thereafter the truck did take to the right of the pavement as plaintiff thought, and had a right to think, in order to let him pass. What more could be required of him? It is true that the truck driver did not hear or receive the signal, and, therefore, his movement to the right was not in response to plaintiff's signal, but if he had done his duty he would have discovered plaintiff's presence and the collision could have been avoided. Even if plaintiff had been where he was through negligence—which he was not—still the driver of the truck would be responsible for the collision under the doctrine of the last clear chance.

Defendants have cited several other cases which we have studied carefully, but we find nothing in them to absolve the driver of defendant's truck from negligence.

In the case of Lewis v. Gulf Refg. Co., 7 La. App. 499, this court said:

"Under all the rules and practices, aside from any statutory regulations, the driver of a motor vehicle on a much travelled street, as this was, who desires to make a left turn across the street, must be particularly careful and on the alert for cars meeting or overtaking his, and must not make such turn until he is sure the way is open."

Of course, the above case involved a collision on city streets. But in this day of improved and paved roads, rules that are applicable to city traffic are becoming more and more applicable to traffic along the highways. Common experience warns us that a car may be expected to be immediately in the rear in the country almost as often as in the city.

In the case of Payne v. Prestridge, 16 La. App. 479, 133 So. 512, 513, decided by this court, we said:

"It must be admitted that the most dangerous movement on public streets or highways is the left-hand turn. Particularly is this true when the street on which this turn is attempted is a right of way street as Highland avenue is in the city of Shreveport. Any one driving south on Highland avenue has a right to presume that his passage will not be impeded by any one at intersections. One intending to turn off this street on the left, which necessitates crossing the street and interfering with or cutting two lines of through traffic, must use the utmost care and caution. He has no right of way across. He must bide his time. If necessary, he must give the proper warning to the traffic behind him and come to a full stop and await a favorable opportunity to turn off the street when he will not interfere with traffic in either direction. He must not be content with holding out his hand and suppose that all see it. He must look both ways and be sure he is safe before he undertakes to go ahead."

In the case of White v. Kennedy et al., 17 La. App. 315, 135 So. 694, this court had to consider facts on all fours with those now under consideration, and we increased the judgment of the lower court for the plaintiff.

Section 19 (a) of Act No. 296 of 1928, reads in part as follows:

"The driver of any vehicle upon a highway before starting, stopping or *turning from a direct line* shall first *see* that such movement can be made in *safety*. * * *"

This is the latest expression of the Legislature on the subject. It is the law governing this case. In this section, the word "see" means ascertain, discover, or be aware. In the case of trucks it is specially required that they be equipped with rear-view mirrors that will afford a perfect view of everything within 200 feet to the rear. It cannot be said that the holding out of the left hand without seeing the condition of traffic in the rear will absolve the driver from negligence any more than it could be said that such a signal would absolve him from negligence even though he saw it was either unseen or unheeded by the traffic in front.

In this case the driver of the truck did not properly look to the rear, for if he had done so he would have seen the plaintiff. The case is as though he held out his hand without any thought as to whether a signal was being seen or heeded, and recklessly cut across the line of traffic. In so doing he was guilty of gross negligence.

For the reasons assigned the judgment appealed from is affirmed, with all costs to be paid by the defendants and appellants.