ALVIN A. PETERSEN, APPELLANT, V. JOHN SCHNEIDER ET AL., APPELLEES.

46 N. W. 2d 355

Filed February 16, 1951. No. 32859.

*Otto H. Wellensiek,* and *Olsen & Holtorf,* for appellant.

*Neighbors & Danielson,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

This is an action for damages resulting from an automobile accident. The jury returned a verdict for the defendants and plaintiff appeals.

The evidence shows that on November 8, 1948, at approximately 11 a. m., Paul H. Wellensiek, Glenn Heng, and the plaintiff, Alvin A. Petersen, were traveling east on U. S. Highway No. 26N about eight miles east of the village of Northport in Morrill County. The automobile belonged to the plaintiff and was being driven by Wellensiek. The day was clear and the pavement was dry. The highway was oiled, the oiled portion being about 28 feet in width. It was straight and level at the place where the accident occurred.

The evidence offered on behalf of the plaintiff shows that the three men were riding in the front seat of plaintiff's car and that they first observed defendants' truck approximately a quarter of a mile ahead of them, traveling east on the right-hand side of the highway. They were traveling at a speed of 45 to 50 miles an hour and the highway was free of traffic except for defendants' truck. Wellensiek, the driver of the car, testified that he turned to the left side of the highway about 100 yards

back of the truck for the purpose of passing it. He says that he sounded his horn until he was within 10 feet of the rear end of the truck. This evidence is corroborated by the other two men, except that one of them says the horn was first sounded 50 yards back of the truck. When the car was even with the rear end of the truck and four or five feet to the north of it the truck turned to the left across the highway to enter a private driveway. Wellensiek immediately turned his car to the left until the left wheels were off the oiled portion of the road. The truck struck the car about 18 inches in from the north edge of the oiled portion of the road. The front bumper and fender of the truck struck the automobile on its right side at some point at or near the right rear fender.

The private driveway runs north from the highway and it is approximately 18 feet in width. The collision occurred on the east edge of the private driveway, where it enters the main highway. There is an irrigation ditch which parallels the east side of the private drive about 25 feet east of it. East of the irrigation ditch is a borrow pit along the highway which is 2 feet lower than the highway and 12 to 15 feet wide. The automobile struck the irrigation ditch and rolled down the borrow pit. It came to a stop 191 feet east of the private drive. The automobile was almost completely destroyed. Wellensiek was unconscious and was unable to testify to anything that occurred after the collision. The plaintiff suffered serious injuries, the extent of which is not important on this appeal. The three men riding in the car testify that the driver of the truck did not signal an intention to turn across the highway into the private drive. Plaintiff testifies that he asked the defendant John Schneider, the driver of the truck, the question: "Man, why didn't you signal when you made a left hand turn?" And Schneider answered: "Well, I didn't think I would have to; that I was far enough ahead."

The defendant John Schneider was the only witness for the defendants, the owners of the truck. His testimony is that he was driving his truck down the right-hand side of the highway at a speed of 35 to 40 miles an hour. He says that there was a beet box on the truck which was 7 feet 4 inches in width and with a depth of 32 inches. It extended 16 inches beyond the cab of the truck on each side. He says that he observed plaintiff's automobile coming behind him through his rear vision mirror and estimates that it was .6 of a mile back when he first saw it. He gave the speed at which the automobile was being driven as 70 miles an hour. He says that when he was within .1 of a mile from the entrance to the private drive, he slowed down to 20 miles an hour. When he was 300 feet from the private drive he rolled his left window down and then gave a left-hand signal of his intention to turn across the highway to the left, and continued to give such signal until he was 20 feet from the entrance to the private drive. The left window of the cab was down when the sheriff arrived at the scene of the accident shortly after its occurrence. On cross-examination Schneider was asked: "You didn't look to see where it (plaintiff's car) was before you made the turn, did you?" He answered: "I didn't figure it was necessary from the distance it was when I looked." Defendant Schneider further states on cross-examination that he turned into the private drive at "pretty much" of a right angle at about 20 miles an hour.

The statute regulating the turning of motor vehicles on a highway provides: "(a) No person shall turn a vehicle from the direct course upon a highway unless such movement can be made with reasonable safety, and then only after giving * * * an appropriate signal in the manner hereinafter provided in the event any other vehicle may be affected by such movement. (b) A signal of intention to turn right or left shall be given continuously during not less than the last fifty feet traveled by the vehicle before turning." § 39-7,115, R. S.

1943. A violation of this statute constitutes evidence of negligence under our holdings. In this respect we point out that the defendant failed to signal a left turn in compliance with this statute for the reason that he failed to signal his intention to turn left for a minimum distance of 50 feet before making the turn as the statute requires. The evidence of defendant that he did signal an intent to turn to the left from some point within 200 feet to within 20 feet of the point of turning, even though not a full compliance with the statute, is ordinarily competent as bearing on the degree of negligence or contributory negligence of the parties. Mann v. Standard Oil Co., 129 Neb. 226, 261 N. W. 168.

The most dangerous movement on public streets or highways is the left-hand turn. While the left-hand turn at intersections is within the purview of this statement, the left-hand turn across a favored public highway between intersections is a particularly dangerous one. Legislatures have seen fit to regulate such movements and courts have required a degree of care commensurate with the danger. The language of our statute states that no person shall turn a vehicle from the direct course upon a highway unless such movement can be made with reasonable safety, and then only after giving the statutory signal. In other words, the giving of the statutory signal is not enough, one must exercise reasonable care under all the circumstances. He cannot rely on holding out his arm and trust that all may see it. He must take reasonable precautions for his own safety and the safety of others before he undertakes a left turn between intersections where such movements are not anticipated. As was stated in Brown v. Perkins, (La. App.) 144 So. 176: "It cannot be said that the holding out of the left hand without seeing the condition of traffic in the rear will absolve the driver from negligence any more than it could be said that such a signal would absolve him from negligence even though he saw it was either unseen or unheeded by the traffic in front."

In the case before us the defendant, when some 500 feet from the private drive, saw the plaintiff's car through the rear vision mirror, coming about one-half mile behind him. He therefore knew that plaintiff's automobile was coming along behind him. He did not look to the rear within 200 feet before turning, according to his own testimony, either through his rear vision mirror or otherwise. He drove to the point of the accident and, without looking at all for plaintiff's car or other traffic, turned his car onto the north side of the highway and into the car of the plaintiff. This is negligence as a matter of law and indicates a reckless disregard for his own safety and for that of others lawfully using the highway.

The requirement that one must look to the front and rear before making a left turn between intersections is not met by looking at a point 200 feet distant from the place of the intended left turn. One must look at a time when possible danger could be observed. The observations must be made immediately before the impending movement; otherwise, as in this case, the observation would be completely ineffective for the accomplishment of the purpose intended. It is entirely proper, of course, for one vehicle to pass another which is traveling in the same direction. It is not negligence for the passing car to turn to the left side of the highway for such purpose when the left lane is free of traffic. Nor is it negligence to drive at a reasonable speed, usually defined by law, additionally limited by the care required by existing conditions which are apparent to the driver. In the case before us there is no evidence of speed at the time of the passing, except that of the plaintiff and his witnesses who say they were traveling 45 to 50 miles an hour. This was not a negligent rate of speed under the circumstances shown.

The truck body was one constructed for the hauling of sugar beets. It extended 16 inches out from the cab and was 32 inches high. This, of course, interfered with

the vision of the driver of the automobile in seeing a turn signal by the driver of the truck. The driver of the truck says he signaled the left turn in the manner heretofore stated; the occupants of the automobile say he did not. There is evidence that the driver of the truck told the plaintiff immediately following the accident that he did not signal, as he did not think it was necessary because of the distance the automobile was back of him when he last saw it. This statement is denied and the defendant John Schneider testifies that he gave a left-turn signal from some point within 200 feet to within 20 feet of the point where he commenced to turn. But even so, after considering the obstructions on the truck itself, the failure of the driver of the truck to signal in the manner the statute prescribes, and the utter failure of the defendant John Schneider to look for automobiles in the lane he was about to enter in making his turn to the left into the private drive, we are convinced that the proximate cause of this accident was the failure of the driver to look before making the turn to the left. The Supreme Court of California in discussing the same question said: "Some states hold the driver of an automobile can be held responsible only for what occurs in front of him, but an examination of section 130 (a) of the California Vehicle Act, cited above, clearly places a duty upon the driver who contemplates turning upon the highway to first ascertain if such movement can be safely made, with reference to both front and rear, and if not to wait until it can be made in safety, and then shall indicate by a signal his intention so to do. We cannot see where the negligence of plaintiff was a proximate cause of the injury and therefore we cannot hold him to have been guilty of contributory negligence. One driving in the rear of another car has the right to assume that a motorist will obey the law of the road and is not bound to anticipate that a car will leave its proper side and cross the highway, at least where there is no intersection of public highways,

and nothing to lead one in the exercise of reasonable care to foresee such action." Young v. Cerrato, 2 Cal. App. 2d 421, 37 P. 2d 1063. It is true that in the foregoing case there was no signal given while in the instant case the signal alleged to have been given did not meet statutory requirements and, in any event, was difficult to see because of obstructions on the truck itself. There may have been some negligence involved in not seeing such a signal but certainly not sufficient to defeat the action. As we have stated, the proximate cause of this accident, under the record made, was the failure on the part of the driver of the truck to look to the rear at a time when looking would have been an effective means of averting the accident. Under the particular facts of this case the verdict of the jury was clearly wrong. It is not sustained by the evidence.

We think the correct rule to be applied in cases of this kind is: Where the driver of a vehicle turning across a street or highway between intersections fails to look at all at a time and place where to look would be effective, or looks and negligently fails to see that which is plainly in sight, or is in a position where he cannot see, a question for the court is usually presented. Where he looks but does not see an approaching automobile because of unusual conditions or circumstances, or sees the approaching vehicle and erroneously misjudges its speed or distance, or for some reason assumes he could safely complete the movement, the question is usually one for the jury.

The rule is in line with the holdings of this court where persons failed to look in situations where similar dangers are involved. Doan v. Hoppe, 133 Neb. 767, 277 N. W. 64; Trumbley v. Moore, 151 Neb. 780, 39 N. W. 2d 613; Kubo v. Fish, 152 Neb. 74, 40 N. W. 2d 270.

We hold under the undisputed facts of this case that the verdict of the jury was clearly wrong and that plaintiff's motion for a new trial should have been sus-

tained. The judgment is reversed and the cause remanded for a new trial.

REVERSED.

WENKE, J., dissenting.

I dissent from the majority opinion for in my judgment it determines certain issues that should be submitted to a jury.

I am fully in accord with the majority view that the truck driver's failure to look, at the time and under the circumstances as in the opinion set forth, constitutes negligence on his part as a matter of law, but I am unwilling to agree that such negligence was necessarily the proximate cause of the accident that followed.

The driver of the truck testified, as set out in the majority opinion, that: "When he was 300 feet from the private drive he rolled his left window down and then gave a left-hand signal of his intention to turn across the highway to the left, and continued to give such signal until he was 20 feet from the entrance to the private drive." While there is evidence, as set out in the majority opinion, that discredits this testimony and also evidence, as therein set forth, that indicates it possibly would have been difficult for the driver of the car to have seen the signal, however, whether it was actually given and, if it was, whether it could and should have been seen by the driver of the car when he turned left to pass the truck, which he testifies was at a point some 100 yards back of it, are factual questions for a jury to decide.

If a jury should come to the conclusion, which under this evidence I think it would have a right to do, that the signal was given and that the driver of the car could and should have seen it if he had looked, then, in my opinion, a jury could properly come to the conclusion that it was the car driver's failure to look and see the warning signal or, if he looked, his failure to see it that was the proximate cause of the accident rather than the truck driver's failure to look.