HARVEY M. DAVIS, ADMINISTRATOR OF THE ESTATE OF DONALD G. DAVIS, DECEASED, APPELLANT, V. DEXTER E. SPINDLER ET AL., APPELLEES.

56 N. W. 2d 107

Filed December 12, 1952. No. 33179.

*Luebs & Elson,* for appellant.

*Louis A. Holmes* and *Kirkpatrick & Dougherty,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Plaintiff brought this action to recover for the wrongful death of his minor son resulting from a collision between an International truck-trailer traveling east and a Pontiac four-door sedan traveling west. The collision occurred about one a. m., March 17, 1951, on U. S. highway No. 34, a two-lane paved highway 20 feet wide, at a point other than an intersection thereon, about one-quarter mile east of Aurora, Nebraska.

Admittedly the truck, owned and operated by defendants Dexter E. Spindler and C. James Holm, doing business as a co-partnership under the name of Grand Island Dairy Products Co., was being driven by defendant Donald L. Larson, their employee, who at the time of the accident was acting for them within the course and scope of his employment. Concededly, the truck with trailer attached was approximately 45-feet long, and then carried a cargo of eggs weighing 22,000 pounds. Defendants George W. Butcher and Percy Butcher, doing business as Butcher Bros., were dismissed out of the case upon demurrer from which no appeal was taken. The car was owned by plaintiff's son, Donald G. Davis, hereinafter called decedent, but at the time of the accident it was being driven by another young man while the son was a passenger therein.

At conclusion of plaintiff's evidence, defendants each moved for a directed verdict, or in the alternative for judgment, upon the ground of insufficiency of the evidence to establish any negligence of defendants proximately causing the accident. Such motion was sustained and plaintiff's motion for new trial was overruled, whereupon he appealed, assigning substantially that the trial court erred in so doing. We sustain the assignment.

Insofar as important here, plaintiff substantially alleged in his petition that the driver of defendants' truck was negligent in that: (1) He failed to keep a proper lookout or have the truck under reasonable control; (2) failed to yield the right-of-way and stop or remain

on the right-hand or south side of the highway until the oncoming car, on its right or north side of the highway, in which decedent was riding as a passenger, had passed; and (3) negligently turned from a direct course across the highway into the path of and against such car, when such movement could not be made with reasonable safety, all of which proximately caused the accident and resulting death.

Defendants answered, denying generally and alleging that the damages sustained, if any, were caused and contributed to by the negligence, more than slight, of decedent and the operator of his car, who were engaged in a joint enterprise, thereby imputing the negligence of one to the other. Plaintiff's reply was in form a general denial.

The evidence adduced in plaintiff's behalf disclosed that: On March 16, 1951, decedent and three other young men, all of whom lived in Grand Island, attended a high school basketball tournament in Lincoln. A young lady friend of decedent, whose parents had recently moved to Grand Island, was permitted to ride back in the car with them. At about 10 p. m. she got into the car and they started from Lincoln to Grand Island. They stopped 10 or 15 minutes at a station on the outskirts of Lincoln to refuel the car and get something to eat. After leaving Lincoln decedent sat on the left side of the back seat with another young man on the right side and the young lady between them. Another young man, 19-years old, drove the car while another sat by his side. As they drove along decedent went to sleep and the young lady visited with the other young man on her right until she also slept. She was asleep when the accident occurred, and did not know anything about the details thereof or even that there had been an accident until about two weeks later, after hospitalization. She alone survived. Thus there were no surviving eye witnesses in the car.

After the accident the young man sitting on the

right of the back seat and the young lady were found lying outside the car on the gravel north of the pavement and west of the car. Two young men were still in the front seat, with decedent in the back seat. All three were dead. The young man on the ground was taken to a hospital but also lost his life.

It was a cloudy, dry, dark night. The collision occurred just south and east of a filling station and cafe housed in one building 24-feet long, north of the pavement. The cafe was in the west end and the station in the east. Four gas pumps were located 34 feet north of the north edge of the pavement between the filling station and the pavement. The accident occurred south and a little east of the east pump. There was one lighted visible flood light on the east end of the building and one on the southwest which lighted around the pumps, the front of the station, and out into the highway on a dark night.

At the time of the accident there were four people in the cafe. They did not see the collision but heard the crash and immediately went outside to see what had happened. A car owned by one of them was parked facing west, parallel with the north edge of the pavement just south and east of the east gas pump. The owner and another testified that the car was parked about six or eight feet north of the pavement. A police officer thought it was about 10 or 12 feet, but the sheriff thought it was about 20 feet north of the pavement. In any event, it was parked close enough so that when the car here involved apparently swerved as shown by marks on the gravel north of the pavement, its right back bumper struck and damaged the left front hubcap and fender of such parked car. A truck and trailer unit, owned and operated by defendants but not directly involved in the collision, was also parked six or eight feet north of the pavement facing east with its front about even with the west edge of the cafe. Thus there was an open space just north of the pavement be-

tween such truck and parked car. From the edge of Aurora to the station the highway was level and straight except for a slight curve to the southeast just west of the station. Going east therefrom the highway was straight and slightly upgrade for about four-tenths of a mile to the top of the upgrade. The platform and entrance to the station were about the same level as the pavement, and the view from the station east was unobstructed to the top of the upgrade.

Defendant driver, traveling east, had been previously following quite a ways behind the other truck already parked on the north side of the pavement just west of the cafe. At the time of the collision defendant driver was turning left at 15 miles an hour across the westbound lane of traffic along which decedent's car was traveling, to park in ahead of the truck he had been following; that is, to park in the space between the parked car and the parked truck.

Two persons who were in the cafe testified concerning the positions of the truck and the car right after the accident. Their testimony was verified by several identical photographs offered by both plaintiff and defendants. The truck and car here involved were still in the same positions when a police officer and sheriff arrived a few moments later to investigate the accident. The tractor part of the truck was facing northeast and the car was facing southwest. The front ends of the vehicles were located south and east of the gas pumps a short distance north of the north edge of the pavement. The car was all north of the pavement, on the gravel. The front end of the tractor was off the pavement with its left rear drive-wheels stopped just north of the pavement after sliding 10 feet in a northeasterly direction. The left front of the tractor and the left front of the car had collided and meshed into each other. The left front wheel of the car was apparently pushed backward to the northeast. Its engine was pushed back up into the driving compartment, and the left front

side of the car was practically sheared back to the front of the top. The right front side of the car, up to the fender, was also damaged and there were no lights on the car after the accident. All of the trailer was in the north half of the highway, the right rear wheel thereof being on the center line of it.

The police officer arrived first and directed removal of the parked truck not involved in the collision so that an ambulance could drive in. The sheriff arrived soon thereafter and, after both had investigated the accident, the sheriff prepared a written report which defendants themselves offered in evidence, verifying the testimony of such officers. They testified that there were skid marks 10 feet long running in an easterly or southwest to northeasterly direction back of the tractor drive-wheels. In that connection, the sheriff's report said: "The tractors left rear wheels slid 10 feet after impact, * * *." However, in his direct testimony the sheriff said that they must have slid before the impact.

The sheriff talked to defendant driver that night, at which time the driver said that he "didn't see any lights." The next morning, however, he told the sheriff that he "didn't see the lights until about ten feet before the impact." That "he didn't see it (the car) until about ten feet before the impact."

There is no evidence that such defendant timely looked before turning but did not or could not see any lights or car until about 10 feet before the impact. He only used the language quoted aforesaid. It would be logical to infer therefrom that the lights on the car were theretofore burning but defendant driver did not keep a proper lookout to see them or the car and avoid collision. Whether or not the lights on defendants' truck were burning prior to the collision is not directly established in the evidence. From photographs taken after the accident it would appear that his right headlight was then burning.

Of course, if defendant driver had no lights burning

on the truck before the accident he violated sections 39-778 and 39-780, R. R. S. 1943. We may assume, however, for purpose of argument only that his lights were burning before the accident. In such a situation under the general rule it was defendant driver's duty in driving the truck to keep such a lookout ahead that he would see an obstruction or vehicle as soon as it was illuminated by his lights and it was his duty to have his truck under such control under the driving conditions then existing that he could stop it in time to avoid a collision with any object in the area lighted by his lights. Remmenga v. Selk, 150 Neb. 401, 34 N. W. 2d 757. As stated in that opinion, quoting from Buresh v. George, 149 Neb. 340, 31 N. W. 2d 106: " 'The basis of this rule is that a driver of an automobile is legally obligated to keep such a lookout that he can see what is plainly visible before him and that he cannot relieve himself of that duty. And, in conjunction therewith, he must so drive his automobile that when he sees the object he can stop his automobile in time to avoid it.' "

In Buresh v. George, *supra,* it was held: "As a general rule it is negligence, as a matter of law, for a motorist to drive an automobile so fast on a highway at night that he cannot stop in time to avoid a collision with an object within the area lighted by his lamps." As stated in the opinion: "* * * we have made exceptions to this general rule when the nature of the object or its condition, such as color, dirt, et cetera, in relation to the highway or road, affected its immediate visibility or when, because of the lights of oncoming traffic, the driver's attention is distracted or his vision impaired and his opportunity for immediate discernment thereby affected. In such cases we have held that the issue of the driver's negligence, if any, and the degree thereof is for the jury." In that connection, however, the evidence now before us does not bring defendants within any of the recognized exceptions but rather within the general rules heretofore stated.

In reviewing the evidence adduced by plaintiff we have observed the rule that a motion for directed verdict or its equivalent must, for the purpose of decision thereon, be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed. Such party is entitled to have every controverted fact resolved in his favor and to have the benefit of every inference that can reasonably be deduced from the evidence. Stark v. Turner, 154 Neb. 268, 47 N. W. 2d 569.

Stark v. Turner, *supra,* also held: "In an action where there is any evidence which will support a finding for a party having the burden of proof, the trial court cannot disregard it and direct a verdict against him. * * *

"The violation of any statutory or valid municipal regulation, established for the purpose of protecting persons or property from injury, is sufficient to prove such a breach of duty as will sustain a private action for negligence, if the other elements of actionable negligence concur.

"Such a violation is evidence of negligence, which the jury is entitled to consider upon the question whether actionable negligence existed."

In Meyer v. Platte Valley Construction Co., 147 Neb. 860, 25 N. W. 2d 412, this court held: "In negligence cases, the burden of proof is upon plaintiff to show by a preponderance of the evidence that an accident was proximately caused by some negligent act charged, directly attributable to defendant, and to support a verdict, negligence must be so established, either by direct proof or by physical facts or circumstances, of sufficient weight from which a reasonable inference of the same may arise.

"If contributory negligence is relied upon by defendant as an affirmative defense, the burden is upon him to prove it by a preponderance of the evidence pertinent to that issue contained in the whole record, except inso-

far as the same may appear in evidence adduced for plaintiff."

In Anderson v. Nincehelser, 152 Neb. 857, 43 N. W. 2d 182, this court held: "Where there is no eyewitness, no direct evidence of the accident causing the injury, the facts and circumstances may be proved by circumstantial evidence, and the presumption is raised by the instinct of self-preservation on behalf of the deceased that he was not guilty of contributory negligence, but was in the exercise of due care and caution for his own safety, unless the contrary is shown.

"Admissions of a party against interest made in court or out of court, with reference to and pertinent to the issues being tried, are admissible in evidence against such party.

"In those cases where reasonable minds may differ on the question of whether or not the operator of an automobile exercised the care, caution, and prudence required of him under the circumstances of the particular situation the issue of negligence on the part of the operator is one of fact to be determined by a jury." See, also, Weisenmiller v. Nestor, 153 Neb. 153, 43 N. W. 2d 568.

The pertinent statutes here involved follow. Section 39-746, R. R. S. 1943, provides: "Upon all highways of sufficient width, except upon one-way streets, the driver of a vehicle shall drive the same upon the right half of the highway and shall drive a slow moving vehicle as closely as possible to the right-hand edge or curb of such highway, unless it is impracticable to travel on such side of the highway and except when overtaking and passing another vehicle, subject to the limitations applicable in overtaking and passing set forth in section 39-748."

Section 39-748, R. R. S. 1943, provides: "Drivers of vehicles proceeding in opposite directions shall pass each other to the right, each giving to the other one half of

the main traveled portion of the roadway as nearly as possible."

Section 39-7,115, R. R. S. 1943, provides: "(a) No person shall turn a vehicle from the direct course upon a highway unless such movement can be made with reasonable safety, and then only after giving a clearly audible signal by sounding the horn if any pedestrian may be affected by such movement, and after giving an appropriate signal in the manner hereinafter provided in the event any other vehicle may be affected by such movement. (b) A signal of intention to turn right or left shall be given continuously during not less than the last fifty feet traveled by the vehicle before turning."

In that connection this court has held: "A party driving an automobile lawfully, upon his proper side of the highway, who observes an approaching car, has a right to assume that the driver of the oncoming car will not violate the law in passing," or "in turning into his lane of travel" as stated in the opinion. Belik v. Warsocki, 126 Neb. 560, 253 N. W. 689. See, also, Callahan v. Prewitt, 141 Neb. 243, 3 N. W. 2d 435; Bainter v. Appel, 124 Neb. 40, 245 N. W. 16.

As recently as Petersen v. Schneider, 153 Neb. 815, 46 N. W. 2d 355, this court held that: "A left-hand turn ✸ across a public highway between intersections is fraught with danger, and one making such a movement is required to exercise a degree of care commensurate with the danger."

In the light of such rules, it could reasonably be concluded from the evidence heretofore recited that defendant driver violated such statutes and was otherwise negligent as alleged, which proximately caused or contributed to the collision and resulting death.

Finally, we are concerned with the status of decedent who owned the car but was a passenger therein.

In Petersen v. Schneider, 154 Neb. 303, 47 N. W. 2d 863, a comparable situation, this court said: "The owner of an automobile may in some cases be considered a

guest of the driver so that the driver's negligence will not be imputed to him. * * * The rule in this state is: Where the owner is a passenger in his own automobile while it is being operated by another, the negligence of the operator is not imputable to the owner, except where the operator is the owner's servant or agent, or where the operator and the owner are engaged in a joint enterprise, or where the owner assumes to direct the operation of the automobile and to exercise control over it."

In Van Auker v. Steckley's Hybrid Seed Corn Co., 143 Neb. 24, 8 N. W. 2d 451, it was held: "The question of whether a person riding in a motor vehicle is a guest, or engaged in a joint enterprise, or other relationship, is generally one for determination in the individual case. It must be ascertained from facts establishing the identity of the persons advantaged by the carriage, the relationship between the parties, and the purposes to which the transportation is incident.

"If the evidence is undisputed, or such that minds of men could not reasonably arrive at any other conclusion, the question is one for decision by the court as a matter of law; otherwise, it is a question for the jury to decide as other issuable facts in the case."

In that connection, the undisputed evidence as presented at this time establishes as a matter of law that decedent was a guest in his car, and there is yet no evidence from which it could reasonably be concluded that the negligence of the driver thereof, if any, could be imputed to decedent, as alleged by defendants.

Thus, if we assume for the purpose of argument only that decedent's driver was grossly negligent in some manner proximately causing the accident, it would not preclude recovery from defendants if their driver's negligence in some manner as alleged proximately caused or contributed to the accident. In that regard, Stark v. Turner, *supra,* held: "Where the independent tortious acts of two persons combine to produce an injury indivisible in its nature, either tortfeasor may be held for

the entire damage—not because he is responsible for the act of the other, but because his own act is regarded in law as a cause of the injury."

As held in Kuska v. Nichols Construction Co., 154 Neb. 580, 48 N. W. 2d 682: "Where separate independent acts of negligence by different persons combine to produce a single injury, each participant is liable for the resulting damages, although one of them alone might not have caused the injury."

Such case also held: "The negligence of a person while driving an automobile with another as his guest may not ordinarily be imputable to the guest, but such guest may be responsible for the consequences of his own negligence."

As the record comes to us at this time, we find no evidence from which it could be concluded that decedent was guilty of any contributory negligence as alleged by defendants.

For the reasons heretofore stated, the judgment of the trial court should be and hereby is reversed and the cause is remanded for a new trial.

REVERSED AND REMANDED.