PAUL S. KRUGER, APPELLEE, v. ERVIN CLARK CONSTRUCTION COMPANY, A PARTNERSHIP, APPELLANT.

88 N. W. 2d 778

Filed March 21, 1958. No. 34307.

*Cassem, Tierney, Adams, Kennedy & Henatsch,* for appellant.

*O'Hanlon & O'Hanlon,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This is an action at law brought by Paul S. Kruger as plaintiff, against Ervin Clark Construction Company, a partnership, defendant, in the district court for Washington County to recover damages to the plaintiff's vehicles, and for personal injuries sustained by the plaintiff as a result of a collision between the plaintiff's vehicles and a vehicle driven by an employee of the defendant. The defendant filed a counterclaim to recover damages to its truck. The parties waived a jury trial and the trial was had to the court. The court rendered judgment in favor of the plaintiff, fixing the amount of his recovery in the sum of $693.40 and costs, and found against the defendant on its counterclaim. The defendant filed a motion for new trial or for dismissal of the plaintiff's cause of action. This motion was overruled. From this order, the defendant appeals.

The record discloses that the plaintiff is a farmer and cattle feeder. On October 1, 1956, at about 9 a.m., on a calm, clear day, he was driving a 1950 Ford pickup truck, the overall length of which was 14 feet. Attached to the truck by a 6-foot stub tongue was an en-

silage wagon 12 feet in length. The total length of the vehicles he was driving was 32 feet. The truck was 6 feet wide, and the ensilage wagon was 7 feet wide. There were about 5 bushels of ear corn in the truck box, and the ensilage wagon was loaded with ensilage which was "rounded up" in the wagon. The truck was equipped with a rear view mirror above the windshield, but there was no rear view mirror on the outside of the truck. The road the plaintiff was traveling on was a county road, 24 feet wide with a covering of gravel and crushed rock. The graveled portion of the road was 18 feet wide. The road runs east and west in a straight direction, with visibility good. The plaintiff was hauling ensilage from a farm owned by him to another farm when the accident occurred about a mile and a half east of Fort Calhoun.

The plaintiff testified that the ensilage was picked up about three-quarters of a mile east and about 100 rods south of the point of impact; that he turned onto the county road and proceeded west; that as he proceeded down the road he was traveling at a rate of speed of 10 to 15 miles an hour, intending to turn into a driveway to his farm; that the driveway was about 20 feet wide; that he extended his arm out of the left window which was down, and his head was close to the window, to signal the turn to the left; that when he first gave this signal he was 50 or 60 feet east of the driveway he was going to enter and at that time his speed was 3 miles an hour; and that he could see the load behind him on the ensilage wagon, and could see over it. He glanced in the rear view mirror at the time he was giving the signal and saw nothing behind him, and did not see the defendant's truck. Asked whether he could see back along the road for a considerable distance, he answered: "Well, that is hard to say. The truck isn't in shape—to reconstruct the accident, the ensilage was piled up so that there wasn't a good vision. You couldn't see clear down the road but

you could have seen the cab of a truck approaching from the rear." When he first saw the defendant's truck he had turned his front wheels just about off of the road and heard a "sliding of tires or whatever it was." He looked, and the truck was almost on him. That was the first indication he had that the defendant's truck was approaching. He heard no signal. At the time of the impact, the front wheels of the plaintiff's truck were over the culvert (this would be on the south side of the road) and the back wheels were on the left-hand traveled track. The ensilage wagon was trailing in an "arc." The truck was facing due south. The rear wheels were in the southern-most lane. The defendant's truck, at the time of the impact, "was coming down the middle" and struck the plaintiff's truck on the left rear wheel and the ensilage wagon on the left front side. The plaintiff's truck ended up on the south side of the road and the ensilage wagon in the ditch on the north side of the road.

On cross-examination the plaintiff testified that there were no signs or anything to indicate his lead-off road; that there were no lights on the ensilage wagon; and that he was 30 to 40 feet from the turn when he signaled. He further testified that he did not see the defendant's truck until just at the time of the impact; that the plaintiff's truck at that time was across the road; and that at the point of impact there is a clear view back to the east for a distance of 2 miles. He further testified on cross-examination that he was aware that a number of trucks were carrying riprap along that road; that at the time of the impact his vehicles were stretched completely across the county road; that the back wheels of the ensilage wagon were over next to the bank on the north shoulder of the road; that before making a left turn he pulled over to the right as far as possible, it being a sharp turn; and that he got over to the extreme right about 100 yards from the turn.

The defendant's driver testified that he was driving the defendant's truck westward at the time of the accident, carrying rock from the quarry to the river. The load weighed about 12 tons. The total number of trips made by defendant's trucks averaged 50 to 55 a day. He further testified that he saw the plaintiff's pickup truck and wagon when he was probably a mile or a mile and a half down the road; that he kept gradually working up to this truck to go around it, at a speed of 30 to 35 miles an hour, and was gradually closing the gap between the truck he was driving and the plaintiff's vehicles; and that the plaintiff's vehicles were traveling about 10 miles an hour and were on the right, or north, side of the road as he approached. At that time the left, or south, side of the road was open. As he attempted to pass the plaintiff's vehicles he reduced his speed to 20 miles an hour. The plaintiff made a left turn across the road into a private driveway. This witness was not aware of this driveway and had never seen a vehicle enter it. The plaintiff executed a sharp turn in front of him, at which time the defendant's vehicle was about 30 feet from the rear of the plaintiff's ensilage wagon and 60 feet from the front of the plaintiff's truck. He did not see a signal, and could not see the left door of the plaintiff's pickup truck because it was obscured by the ensilage wagon and its contents. When the plaintiff negotiated his turn to the left in front of the defendant's truck, this witness applied his brakes, at which time his speed was approximately 15 miles an hour. At 15 miles an hour it would take approximately 70 to 75 feet to stop this truck. His brakes took hold and slid his wheels on the gravel surface, and he proceeded ahead approximately 10 feet at a speed of 10 miles an hour. This witness further testified that at the time of the impact he was on the left, or south, side of the road; and that at that time the front of the plaintiff's pickup truck was in the driveway a little ways, and the rear end of that truck was out in the road. The

ensilage wagon was across the road. The truck he was driving turned over in the ditch on the north side of the road about 10 feet beyond the point of impact. He did not sound his horn at any time. He applied his brakes when he was 20 feet from the point of the impact.

He further testified that when he was about 150 to 175 feet from the plaintiff's vehicles he started moving to the left, or south, side of the highway in an endeavor to go around the plaintiff's vehicles; that he reached the extreme south side of the highway approximately 100 feet from the point of impact; that as he approached to pass the plaintiff's vehicles, the plaintiff was on the extreme north or right side of the road and the truck this witness was driving was on the extreme south or left side of the road; and that the plaintiff suddenly turned in front of the defendant's truck when it was 30 feet from the rear of plaintiff's ensilage wagon.

The defendant sets forth four assignments of error. For the purpose of this appeal, we consider one which is to the effect that the plaintiff was guilty of negligence to such an extent as to bar recovery on his part.

Section 39-7,115, R. R. S. 1943, pertinent to this appeal, provides in part: "(a) No person shall turn a vehicle from the direct course upon a highway unless such movement can be made with reasonable safety, * * * and after giving an appropriate signal in the manner hereinafter provided in the event any other vehicle may be affected by such movement. (b) A signal of intention to turn right or left shall be given continuously during not less than the last fifty feet traveled by the vehicle before turning."

In the case of Ambrozi v. Fry, 158 Neb. 18, 62 N. W. 2d 259, it is said: " 'A left-hand turn across a public highway between intersections is fraught with danger, and one making such a movement is required to exercise a degree of care commensurate with the danger.' Petersen v. Schneider, 153 Neb. 815, 46 N. W. 2d 355."

In Petersen v. Schneider, 153 Neb. 815, 46 N. W. 2d

355, the factual situation was somewhat similar to that in the instant case. The court said: "The giving of the statutory signal for a left turn under such circumstances will not absolve the driver from negligence where he fails to exercise care for his own safety, and that of others, by looking to the front and rear for the approach of other vehicles using the highway."

As we said in Petersen v. Schneider, *supra,* referring to section 39-7,115, R. R. S. 1943: "A violation of this statute constitutes evidence of negligence under our holdings. * * * The most dangerous movement on public streets or highways is the left-hand turn. While the left-hand turn at intersections is within the purview of this statement, the left-hand turn across a favored public highway between intersections is a particularly dangerous one. Legislatures have seen fit to regulate such movements and courts have required a degree of care commensurate with the danger. * * * the giving of the statutory signal is not enough, one must exercise reasonable care under all the circumstances. He cannot rely on holding out his arm and trust that all may see it. He must take reasonable precautions for his own safety and the safety of others before he undertakes a left turn between intersections where such movements are not anticipated. As was stated in Brown v. Perkins, (La. App.) 144 So. 176: 'It cannot be said that the holding out of the left hand without seeing the condition of traffic in the rear will absolve the driver from negligence any more than it could be said that such a signal would absolve him from negligence even though he saw it was either unseen or unheeded by the traffic in front.' * * * 'One driving in the rear of another car has the right to assume that a motorist will obey the law of the road and is not bound to anticipate that a car will leave its proper side and cross the highway, at least where there is no intersection of public highways, and nothing to lead one in the exercise of reasonable

care to foresee such action.' Young v. Cerrato, 2 Cal. App. 2d 421, 37 P. 2d 1063."

It is true that in the foregoing case there was no signal given while in the instant case there was a signal given under the circumstances as heretofore set out. In any event, it was difficult to see because of the obstruction caused by the load of ensilage on the wagon.

Referring again to the case of Petersen v. Schneider, *supra*, the court said: "We think the correct rule to be applied in cases of this kind is: Where the driver of a vehicle turning across a street or highway between intersections fails to look at all at a time and place where to look would be effective, or looks and negligently fails to see that which is plainly in sight, or is in a position where he cannot see, a question for the court is usually presented. Where he looks but does not see an approaching automobile because of unusual conditions or circumstances, or sees the approaching vehicle and erroneously misjudges its speed or distance, or for some reason assumes he could safely complete the movement, the question is usually one for the jury."

In the case of Brown v. Perkins (La. App.), 144 So. 176, cited in Petersen v. Schneider, *supra,* and pertinent to the case at bar, it was the intention of the driver of a truck to turn left across a paved highway into a side road, and for this purpose he had driven to the extreme right side of the road in order to make the turn. In anticipation of this intended turn, and in compliance with the provisions of Act No. 296 of 1928, he had held out his left hand as a signal of his intention. For some unknown reason, probably due to the width of the body of the truck, this signal was not seen by the plaintiff. So that, for all intents and purposes, the situation was the same as though no signal was given either by the overtaking vehicle or by the overtaken truck. The truck was traveling 15 or 20 miles an hour. The automobile following was traveling 35 to 40 miles an hour. The driver of the truck was not at any time aware of the

presence of the automobile, either in the rear or at his side. The driver of the truck testified that his truck was equipped with a rear view mirror and that it did not disclose the presence of the plaintiff's car in the rear. So, acting on the assumption that there was no danger from an overtaking car, he proceeded to make his left turn into the side road. The court said: "This case involves the alleged negligence of the driver of a forward car in making a left turn, and the contributory negligence of the driver of the overtaking car. * * * It is the contention of the defendants that the driver of the truck was not aware of the presence of the plaintiff; that he held out his left hand as required by law and made his left turn. The driver of the truck testified that his truck was equipped with a rear-view mirror which gave him a perfect view of the rear, but that in addition he turned his head around and looked to the rear when he was 30 feet from the side road and saw no one. He says that he then held out his hand and started to make his turn, and that the first knowledge he had of the presence of the plaintiff was when the two vehicles collided. From the evidence it is certain that at the moment before the truck began its left turn plaintiff was within a relatively short distance behind (that is, a distance of between 39.25 and 60 feet). * * * Plaintiff says he was about and nearly even with the truck. In any event, the driver says he did not see him. If his mirror did not reveal him, it did not meet the requirements of the law * * * which says that the rear-view mirror must 'reflect to the driver a view of the highway for a distance of at least two hundred feet to the rear of such vehicle.' If the driver looked outside to the rear he was negligent in not seeing the approaching automobile. If he had seen him where he actually was, the left-hand turn should not have been undertaken until the automobile had passed, for it would certainly be negligence on the part of a driver of a loaded truck to undertake to make a left-hand turn while an automobile was attempt-

ing to pass as close by as plaintiff is bound to have been. The fact that the driver of the truck did not see the plaintiff does not relieve him of negligence, for under our law he is supposed to have seen what he ought to have seen. This is so elemental and fundamental there should be no need of citation to support it." See, also, Vigilant Ins. Co. v. Lumbermen's Mutual Cas. Co. (La. App.), 85 So. 2d 87.

With the foregoing authorities in mind, a summary of the pertinent facts shown by the record may be in order. The plaintiff was driving his pickup truck, and attached thereto was an ensilage wagon. The length of such vehicles was 32 feet. The ensilage wagon was not licensed and there were no lights on the rear end of it to indicate that a turn would be made. This wagon was wider than the truck, and was loaded with ensilage to such an extent that it obscured the vision of the plaintiff. The road was a straight, level, graveled, county road. The plaintiff was traveling west. He endeavored to execute a turn across the highway to enter a private driveway on the south side of the highway. In doing so, he made a sharp turn which brought the truck and the ensilage wagon completely across the road. The defendant's driver was endeavoring to pass the plaintiff's vehicles. The plaintiff contends he made a left-turn signal with his left arm when he was a distance of from 40 to 30 feet from the driveway. The plaintiff did not see the defendant's truck until just about the moment of the impact, although there was a clear view back to the east for 2 miles. The defendant's driver had been watching the plaintiff's vehicles as he approached and had seen no signal. He could not see the left door of the plaintiff's truck because it was obscured by the ensilage wagon. He was approximately 30 feet from the rear end of the ensilage wagon and 60 feet from the front of the plaintiff's truck at the time the plaintiff executed his turn to the left. The defendant's driver immediately applied his brakes. His speed was not over

20 miles an hour. His brakes took hold and his wheels slid on the graveled surface. At the time of the impact his speed was 10 miles an hour. The defendant's driver was unable to turn to the right or left to avoid the plaintiff's vehicles since they were stretched completely across the highway. In addition, there were ditches on either side of the highway.

We hold that under the undisputed facts of this case the judgment of the trial court was clearly wrong, and that the defendant's motion for new trial should have been sustained.

The judgment is reversed and the cause remanded for a new trial.

REVERSED AND REMANDED.