Argued February 3, affirmed March 4, 1953

BLAYLOCK *v.* WESTLUND

254 P. 2d 203

*James M. McGinty,* of Myrtle Creek, argued the cause and filed a brief for appellant.

*Dudley C. Walton* argued the cause for respondent. On the brief were Davis, Walton & Richmond, of Roseburg.

Before LATOURETTE, Chief Justice, and WARNER, ROSSMAN, LUSK and PERRY, Justices.

ROSSMAN, J.

This is an appeal by the plaintiff from an order of the circuit court, which set aside a verdict in favor of the plaintiff and ordered a new trial of the action. The verdict, in the amount of $543.50, was based upon damages which were inflicted upon the plaintiff's automobile, so the plaintiff alleged, when the defendant's car collided with the plaintiff's. The challenged order reads as follows:

"For the reason that the jury was not instructed that the defendant has the right of way over the plaintiff who was making a left turn across defendant's path.

"It is hereby ordered that the verdict rendered herein in favor of the plaintiff be and the same is hereby set aside and that a new trial of this cause be and is hereby granted by the court on its motion."

The plaintiff instituted this action to recover damages in the amount of $543.50 which, according to him, were inflicted upon his automobile when it was struck by one driven by the defendant. The collision occurred December 26, 1950, at about 4:15 p. m., on highway No. 99 at a point about two miles north of Canyonville. Highway No. 99 runs north and south. At the time of the impact the defendant's car was proceeding north. The plaintiff's car, which had been going south a moment prior to the accident, had turned to the left and when hit was crossing the east half of the roadway preliminary to entering a private driveway. Before the plaintiff undertook to turn left, he had stopped his car upon the roadway's right shoulder for a brief pause so that some vehicles to his rear could pass him. There was attached to his car, a coupe, a small trailer which protruded ten feet to the rear.

When the plaintiff's car had crossed the yellow line which marked the center of the pavement, but before

it had entered upon the east shoulder, it was struck by the defendant's. The front of the latter struck the right-hand door of the plaintiff's car. The plaintiff's speed while he was undertaking to cross the pavement was no more than two or three miles per hour. The impact occurred on the east half of the pavement. From the place where the plaintiff paused for a moment, before he undertook to turn to the left across the roadway, he could look to the south down the highway for 500 feet. Thus, a car approaching from the south could be seen from the place of the mishap for 500 feet. The plaintiff swore that before he started to turn he gave a signal and looked to the south. According to him, the defendant's car was not then in sight. He claimed that when it appeared in view it was traveling at a high rate of speed. The defendant testified that he did not see the plaintiff's car until he was about 80 feet from it and that he observed no signal. He estimated his rate of speed as 45 to 50 miles an hour. The defendant's car left skid marks upon the pavement for a distance of 91 feet.

The trial judge instructed the jury, in part, as follows:

"Now, the law provides that the driver of any vehicle upon a highway, before starting, stopping or turning from a direct line, shall first see that such movement can be made in safety and whenever the operation of any other vehicle may be affected by such movement, shall give a signal, plainly visible to the driver of such vehicle of the intention to make such movement and it is the law that the driver of any vehicle upon a highway, before turning from a direct line, shall first see that such movement can be made in safety. The defendant would not be guilty of negligence simply by reason of the fact that a collision occurred. By using the

words 'first seeing that such movement can be made in safety', the law does not mean that the person must actually accomplish the turn in safety or be guilty of negligence. They are not to be held or he is not to be held as an insurer or guarantor of the success in his attempt to negotiate the turn. The test to be applied is this: Under the circumstances would it have appeared to a reasonably prudent person in the position of the plaintiff that he could make such turn in safety."

The above will suffice as a statement of the facts.

In ordering a new trial, the trial judge declared:

"Now, in the case of Black vs. Stith, 164 Or. 117, the defendant had the right-of-way. Now, there is no statutory right-of-way but under this case of Black vs. Stith, 164 Or. 117, the man, undoubtedly, had what is called the common law right-of-way. It says 'While the statute does not confer upon the plaintiff driver any right of way between intersections, we think it is well established under the common law that he has such right.' So that the defendant travelling on his own side of the road had the right-of-way and the other man was not entitled, the plaintiff was not entitled to turn to the left and across the path of the defendant without seeing that that could be done in safety. That is the statutory duty which the law places upon him. The language of the statute is that, in substance, before starting, stopping or turning from a direct line, the driver shall see that such movement can be made in safety. So that he had an affirmative duty to see that that could be made in safety and if it couldn't be made in safety, he was not entitled to turn left across the highway in the path of an oncoming car. The law would require him to yield to the defendant and let the defendant pass first.

"In view of the situation that no instruction was given on the question of right-of-way between intersections, the verdict will be set aside and a new trial granted. Let that be the order."

The answer's specifications of negligence, after mentioning failure to maintain a lookout and failure to burn headlights, set forth the following:

"That plaintiff operated and drove his automobile over and across the center line of said highway onto his left-hand side thereof and onto and into the path of the oncoming traffic proceeding in a northerly direction on said highway while said left-hand lane of traffic was occupied and being traversed by other automobiles, particularly the automobile of defendant.

"Plaintiff operated and drove his automobile over and across the center line of said highway onto his left-hand side thereof and onto and into the path of the oncoming traffic proceeding in a northerly direction on said highway without any signal whatsoever and without sufficient clearance for approaching vehicles from the south."

Our right-of-way statute provides:

"(a) Vehicles approaching an intersection. Drivers, when approaching highway intersections, shall look out for and give right of way to vehicles on the right, simultaneously approaching a given point, * * *.

*  *  *  *  *

"(c) Vehicle turning left at an intersection. The driver of a vehicle within an intersection intending to turn to the left shall yield to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard, * * *." (§ 115-337, OCLA)

It will be observed that those provisions are applicable to "an intersection". Section 115-301, OCLA, defines the term "intersection" as follows:

"The area embraced within the prolongation or connection of the lateral curb lines or, if none, then of the lateral boundary lines of two or more highways which join one another at an angle, whether or not one highway crosses the other."

Subdivision (p) of the same section defines the words "street" and "highway" as:

"The entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular traffic."

It is clear that the place where the impact in question occurred was not an intersection. See *Clark v. Fazio*, 191 Or 522, 527, 230 P2d 553. Since the collision did not take place in an intersection, § 115-337 is not applicable to this cause.

Section 115-335 says:

"The driver of any vehicle upon a highway before starting, stopping or turning from a direct line shall first see that such movement can be made in safety, * * * and whenever the operation of any other vehicle may be affected by such movement shall give a signal as required in this section plainly visible to the driver of such other vehicle of the intention to make such movement."

*Black v. Stith*, 164 Or 117, 100 P2d 485, to which the trial judge referred in entering his challenged order, rose out of circumstances substantially similar to those before us. According to the decision in that case,

"Plaintiffs were driving in a northerly direction on the east side of the highway and defendants were traveling in the opposite direction on the west side thereof. At the place of the accident there was no intersection * * *.

"Defendant Stith, the driver of the Studebaker car, made a left turn across the highway for the purpose of purchasing gasoline at a service station on the east side of the highway."

When his car had crossed the yellow line which marked the center of the pavement and was near the gravel

shoulder, it was struck by the plaintiff's car. We now quote the following from the holding:

"Error is assigned by reason of the giving of the following instructions to the jury, which for convenience will be marked A and B respectively:

"A. 'The driver of an automobile intending to turn left across an open highway such as involved in this action, shall yield to any vehicle approaching from the opposite direction which is so close as to constitute an immediate hazard.'

"and

"B. 'A vehicle shall be driven as nearly as is practicable within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.'

"In determining whether the above instructions constitute reversible error, it is entirely proper to consider the following instructions, marked C and D respectively, given by the court:

"C. 'The driver of any vehicle upon a highway before starting, stopping or turning from a direct line, shall first see that such movement can be made in safety, and whenever the operation of any other vehicle may be affected by such movement, shall give a signal plainly visible to the driver of such other vehicle of the intention to make such movement.'

"and

"D. 'Although it is the law that the driver of any vehicle upon a highway before turning from a direct line shall first see that such movement can be made in safety, the defendants would not be guilty of negligence simply by reason of the fact that the collision occurred. By using the words, "first seeing that such movement can be made in safety" the law does not mean that the defendants must actually accomplish the turn safely or be deemed guilty of negligence. They are not to be

held as insurers or guarantors of success in their attempts to negotiate the turn. The test to be applied is this: Under the circumstances, would it have appeared to a reasonably prudent person in the position of defendants that he could make the turn?'

"In our opinion the instructions A and B given upon request of plaintiffs and upon which error is predicated have no application to the facts in this case. As before stated, the collision did not occur at a highway intersection. Instruction A is in the language of subdivision (c) of § 55-2311, Oregon Code Supplement 1935, which applies to a 'vehicle turning left at an intersection.' Instruction B has no application to a driver of a vehicle turning left *across* the highway: *Lee v. Hoff* (Or.), 97 P (2d) 715. This instruction is subdivision (b) of § 55-2302, Oregon Code Supplement 1935, pertaining to passing from one lane to another. Instruction C is subdivision (a) of § 55-2309, Oregon Code Supplement 1935, and is applicable. Instruction D is a proper construction of the above statutory rule.

"While the statute does not confer upon the plaintiff driver any right of way between intersections, we think it is well established under the common law that he has such right. Of course, this right of the plaintiff driver to proceed must be exercised with care. There is no such thing as an exclusive right to the use of the highway even though the plaintiff is driving on the right side thereof. Defendant driver had the right to turn to the left and across the highway but, in doing so in front of oncoming traffic, he was obliged to exercise a high degree of care. After all, the test is: What would an ordinarily prudent person have done under the same circumstances? We think such person would yield the right of way to a car approaching from the opposite direction, unless he had reasonable ground to believe that he could cross in safety. Any other rule would invite disaster: * * * "

The decision affirmed a judgment for the plaintiff.

Manifestly, there is a difference, material to a motorist such as the defendant, between the privileges afforded by a right-of-way provision and the interpretation which the instructions placed upon § 115-335, OCLA.

We do not believe that the plaintiff's attack upon the challenged order discloses error.

The order awarding a new trial is affirmed.