Argued January 19, reversed March 7, 1956

# FISHER *v.* REILLY

294 P. 2d 615

*Herbert M. Schwab,* Portland, argued the cause for appellant. On the brief were Dusenbery, Teiser, Martin & Schwab, of Portland, and W. C. Schwenn, Hillsboro.

*Francis E. Sturgis,* Hillsboro, argued the cause and filed a brief for respondent.

Before WARNER, Chief Justice, and TOOZE, BRAND and PERRY, Justices.

BRAND, J.

This is an appeal from a judgment in favor of the plaintiff, arising out of a collision between plaintiff's

pickup truck and defendant's sedan. The collision occurred on the afternoon of July 31, 1951, a short distance north of the Tualatin River bridge on Highway 99W between Newberg and Portland. The plaintiff Fisher was driving his pickup truck in a southerly direction in the west lane of the highway. The defendant Reilly was driving his sedan in a northerly direction in the east lane of the highway. The plaintiff made a left turn across the highway in front of the oncoming car of the defendant, intending to enter the private driveway on plaintiff's property. The right front of defendant's car struck the right rear side of plaintiff's pickup. The police officer who arrived at the scene a few minutes after the collision located the point of impact near the center of the north-bound lane where he found dirt and debris. He testified that at the point of impact the skid marks made by defendant's car were in the north-bound lane. Plaintiff testified, however, that the collision occurred east of the paved portion of the highway. The two cars came to rest about a foot apart. The plaintiff's car was then east of the pavement and defendant's car was still on the pavement. There was no street intersection at the point where plaintiff turned left.

The plaintiff testified that he shifted from high into second gear about 75 feet north of the private driveway and before he saw the defendant's car. He first saw the defendant's sedan 350 to 400 feet away when he was still in the south-bound lane, but was starting to turn left to enter his driveway. He testified that he estimated the defendant's speed at 70 to 75 miles per hour, but he added that he thought the defendant would slow down and let him complete his turn into the driveway. Plaintiff gave a left-turn signal. There is some corroborating evidence concerning the

speed of the defendant. A witness who was driving north at about 50 miles an hour testified that defendant passed him on the bridge which was about three-tenths of a mile south of the point of impact, and the witness estimated that defendant was driving 70 miles per hour. The defendant testified to a speed of "approximately" 50 miles an hour, but he also testified as follows:

"A. As I come to the crest of this hill, all of a sudden I saw a pickup truck making a left-hand turn some 100 or 150 feet in front of me and I slammed on my brakes to make a stop, but I didn't quite make it.

"Q. How long did you see this pickup before you realized he was making a left-hand turn?

"A. Couldn't be over a second before I seen him swinging across the yellow line.

"Q. How far was your car from the yellow pickup, when he started swinging across the center line?

"A. Some 100 to 150 feet.

"Q. The point is, you immediately applied your brakes?

"A. Yes.

"Q. After you applied your brakes, just tell us what happened to your car and to the Fisher truck?

"A. I immediately applied my brakes and locked all four wheels into a slide and I made contact with Fisher's car about the center of the lane on the north bound lane of traffic."

If we accept the plaintiff's testimony the defendant's car was 350 to 400 feet away when plaintiff, in second gear, started his left turn, but he was aware of a speed of 70 to 75 miles an hour at which defendant was approaching. If we accept the defendant's testimony the north-bound car was moving at a somewhat

lesser speed but was within 100 to 150 feet of the plaintiff's car when plaintiff turned to the left in front of the oncoming traffic. In either event the left-hand turn was fraught with danger.

Error is assigned by reason of the refusal of the court to grant a directed verdict for defendant.

■ The defendant cites *Black v. Stith,* 164 Or 117, 100 P2d 485, as supporting his claim that the driver who made the left-hand turn was guilty of contributory negligence as a matter of law. In that case, as in the one at bar, the south-bound driver turned left in front of oncoming traffic at a point where there was no intersection. The south-bound driver said he was traveling about 25 miles an hour. After he started to make the left turn he first saw the north-bound car traveling between 60 and 70 miles an hour about 300 feet distant. The driver of the north-bound car testified that he was driving between 40 and 45 miles an hour. The north-bound driver saw the south-bound car 100 to 150 feet away. "The next thing I knew it was right in front of me." Thus far the facts are strikingly like those in the pending case. The legal situation, however, is quite different. In *Black v. Stith* the plaintiff was the north-bound driver. In the pending case the plaintiff was the south-bound driver. The verdict in *Black v. Stith* was in favor of the north-bound driver and against the one who turned left. We affirmed. The case establishes the rule that the north-bound driver had the common-law right-of-way as against the one who turned left in front of him. Concerning the south-bound driver we said that he

"had the right to turn to the left and cross the highway but, in doing so in front of oncoming traffic, he was obliged to exercise a high degree of care. After all, the test is: What would an ordinarily

prudent person have done under the same circumstances? We think such person would yield the right of way to a car approaching from the opposite direction, unless he had reasonable ground to believe that he could cross in safety. Any other rule would invite disaster." Citing cases.

The Stith case is important here. It demonstrates that the defendant Reilly had the right-of-way and the plaintiff was chargeable with knowledge thereof. He therefore had no right to assume that the north-bound defendant would slow down and yield the right-of-way. Yet his own testimony shows that the plaintiff Fisher was relying on the idea that defendant would slow down and yield the right-of-way. He testified:

"Q. And when you saw him coming, what you thought was very fast, you saw him about 350 or 400 feet away?

"A. Yes.

"Q. You started to make your turn, and you thought he would slow down and let you complete your turn?

"A. Certainly, I thought he would. If he would have stayed on the highway and not come off the highway onto the gravel, he wouldn't have hit me. Or if he would have hit me, there wasn't a car coming from the north at all, and he wouldn't have hit me if he had gone into the other lane."

In the Stith case the trial court gave some erroneous instructions and this court invoked Article VII, § 3 of the Oregon Constitution and being of "opinion, after consideration of all the matters thus submitted, that the judgment * * * was such as should have been rendered" we affirmed the judgment for the north-bound driver. The case establishes the fact that, in agreement with the jury we found the driver who

made the left turn was negligent and to that extent the decision is persuasive in the pending case in which the facts are strikingly similar. We said:

"* * * It may be that plaintiff [the north-bound driver] was driving much faster than 40 miles an hour—most drivers do on that section of highway—but, even so, in the absence of notice to the contrary, he could not reasonably anticipate that any car would cut across the highway at such place. * * *"

In affirming the case we arrived at the result after consideration of all of the evidence. We did not hold nor under the constitutional provision did we need to hold that the driver making the left-hand turn was negligent as a *matter of law*.

In the pending case the jury found for the plaintiff who made the left-hand turn. We can overthrow that verdict only if the plaintiff was negligent as a matter of law.

The next Oregon case cited by defendant is *Blaylock v. Westlund,* 197 Or 536, 254 P2d 203. In that case as in the one at bar the plaintiff was south bound and made a left turn. The facts were similar to those in the pending case. There were the same discrepancies in the testimony as to speed and distance when the left turn was made. The turn was not at an intersection. We held that the trial court properly granted a new trial because of its failure to give an instruction to the effect that the north-bound defendant had the right-of-way. The opinion followed and emphasized the rule of *Black v. Stith* but it did not hold that the plaintiff who made the left turn was guilty of negligence as a matter of law.

In *Casto v. Hansen et al.,* 123 Or 20, 261 P 428, plaintiff was riding easterly on a motorcycle. As he

approached an intersection he reduced speed to about five miles an hour and when within 30 or 40 feet of it he looked to the right and saw no automobile. He drove into the intersection, keeping to the right and around the center thereof and proceeded north. He was struck by defendant's northbound car just after clearing the intersection. Defendant appealed from a judgment for plaintiff, contending that plaintiff was guilty of negligence as a matter of law. This court said that it could not say as a matter of law that the plaintiff was guilty of negligence. It is true that the defendant had the right-of-way, but this was an intersection case. The rule was well-stated in a quotation from Huddy on Automobiles, 7th ed, § 311, as follows:

> " 'If a traveler, not having such right of precedence, comes to the crossing and finds no one approaching it upon the other street within such distance as reasonably to indicate danger of interference or collision, he is under no obligation to stop or to wait, but may proceed to use such crossing as a matter of right.' Citing many authorities in support of the text."

We think this case is not controlling here. Circumstances at an intersection where persons may be expected to make left turns and commonly make them may be such as to authorize one approaching the intersection to proceed in compliance with the rule as quoted but might not authorize a left turn into a private driveway. In the latter case the peril is obviously greater, especially when cars are approaching from opposite directions.

Defendant relies upon *Ramp v. Osborne,* 115 Or 672, 239 P 112. In that case plaintiff was driving east and the defendant north. This court rendered judgment for the defendant because of plaintiff's "con-

tributory negligence in disobeying the statute requiring him to look to the right and give the right-of-way to a car approaching the crossing in such a manner that if they both continued on the course a collision would ensue.'' While the language of the court suggests some support for the defendant here, we cannot consider the decision controlling and the facts are distinguishable. The court in *Ramp v. Osborne* announced a stricter rule as to right-of-way than is now recognized. See *Casto v. Hansen et al.*, supra. It may be that plaintiff Ramp was guilty of contributory negligence as a matter of law under the rule as currently applied by this court, but the facts were that he failed to look to the right at a point where he could have seen the approach of defendant. In the pending case plaintiff looked and saw the defendant's car. The Ramp case does, however, approve a rule which is applicable here. Following the ruling in *St. Mary's Academy v. Newhagen,* 77 Colo 471, 238 P 21, the court said:

"* * * A driver who has not the right of way is entitled to assume that the car on his right is not approaching at a negligent rate of speed, but where the driver sees a car approaching from his right at a negligent rate, he has no right to assume that it will slow down and approach the crossing at a careful rate.''

We find no Oregon case which is directly in point, and therefore turn to the decisions in other jurisdictions.

We will first consider the judicial attitude toward the practice of making left-hand turns between intersections. In *Onkels v. Stogsdill,* 151 Wash 194, 275 P 692, the plaintiff who was driving northerly made a left turn to a private drive, in front of the southbound car of the defendant. Plaintiff had verdict and judg-

ment which was affirmed on appeal. The case differs from the one at bar in two respects: There was no evidence that plaintiff was aware of any excessive speed and in truth there was no excessive speed on the part of the defendant. The court stated the rule of law as follows:

"* * * it is undoubtedly the law that respondent in undertaking to make a left-hand turn and cross the highway at a point other than a roadway intersection is held to the exercise of extraordinary care and caution for the preservation of his own safety and to avoid injury to others traveling upon the highway. When respondent turned to his left he placed appellants' automobile on his right, and appellants' machine thereby acquired such benefit as would attach to the enjoyment of the right of way. * * *"

In *Phoenix Baking Co. v. Vaught,* 62 Ariz 222, 156 P2d 725, plaintiff collided with the rear of defendant's car when defendant stopped preparatory to a left turn to a private entrance. The trial court read to the jury the statute which is almost identical to ORS 483.126 which provides that the driver, before turning, "shall first see that such movement can be made in safety." It also gave the following instruction:

"You are instructed that the danger of left-hand turns on much traveled highways between intersections is so great that they should not be attempted without the exercise of extra precaution. Left-hand turns by automobiles between intersections on much traveled highways are less frequent than at crossings, and naturally are not anticipated to the same extent; * * *."

On appeal the court held that no error was committed in giving the later instruction. We quote:

"* * * Under statutes similar to ours, courts generally hold that where, as here, a driver makes a left-hand turn to cross a busy highway between

intersections, he is held to the exercise of 'high degree of care', 'extraordinary care and caution', 'far more vigilance', than the rule of 'due care' would demand under other circumstances. Glick v. Ropes, 18 Wash2d 260, 138 P.2d 858; Onkels v. Stogsdill, 151 Wash. 194, 275 P. 692; Caesar v. Phillips Petroleum Co., 187 Okl. 559, 104 P.2d 429; Esponette v. Wiseman, 130 Me. 297, 155 A. 650; L'Esperance v. Sherburne, 85 N.H. 103, 155 A. 203; Young v. Cerrato, 2 Cal.App.2d 421, 37 P.2d 1063; Black v. Stith, 164 Or. 117, 100 P.2d 485.''

In *Shirley v. Caldwell Bros. & Hart,* La App, 183 So 581, the plaintiff was driving north and the defendant south. Defendant made a sharp left turn and a collision resulted. There was evidence that defendant had stopped before the collision in order to let the plaintiff pass. This, the court said, was the vital point in the case. The facts are unlike those in the pending case, but the court said:

"It is true that a motorist making a left turn across the path of on-coming traffic between intersections is required to use extraordinary precautions, as the motorist coming from the opposite direction on his side of the road is not required to anticipate a sudden left turn into a driveway, although the approaching motorist may also be held negligent in not observing a car making a left turn into a private driveway. * * *''

In *Petersen v. Schneider,* 153 Neb 815, 46 NW2d 355, plaintiff and defendant were driving in an easterly direction, the defendant being in the lead. Plaintiff increased his speed and was in the process of passing when defendant turned sharply to the left, intending to enter a private driveway on the north side of the road. The court said:

"The most dangerous movement on public streets or highways is the left-hand turn. While

the left-hand turn at intersections is within the purview of this statement, the left-hand turn across a favored public highway between intersections is a particularly dangerous one. * * *

"In the case before us the defendant, when some 500 feet from the private drive, saw the plaintiff's car through the rear vision mirror, coming about one-half mile behind him. He therefore knew that plaintiff's automobile was coming along behind him. He did not look to the rear within 200 feet before turning, according to his own testimony, either through his rear vision mirror or otherwise. He drove to the point of the accident and, without looking at all for plaintiff's car or other traffic, turned his car onto the north side of the highway and into the car of the plaintiff. This is negligence as a matter of law and indicates a reckless disregard for his own safety and for that of others lawfully using the highway."

■ In the light of these decisions we are justified in taking judicial notice of the dangers, inherent and extreme, which are involved in the conduct of drivers who turn left between intersections on our modern and congested highways, and in applying that knowledge in determining the issues here. We do not, of course, mean to imply that such drivers are insurers of the safety of others, even under these circumstances.

■ The general duty of one making a left turn in order to enter private premises is stated in 2 Blashfield, Cyclopedea of Automobile Law and Practice, § 1170, as follows:

"Where it is necessary to make a left turn in order to enter private premises, the driver is required to exercise extraordinary care for his own safety and that of others, it being his duty to find an opportunity so that he can cross without creating a dangerous condition, and he should give notice of his purpose to on-coming traffic and proceed slowly,

so that his car can be stopped if the occasion demands, as other vehicles, if within such a distance as to render a collision possible, have the right of way. However, he can assume to a certain extent that other drivers will use due care and have due regard for his rights.''

We now turn to cases which deal more closely with the question of contributory negligence as a matter of law.

In *Kerr v. Augustine Const. Co.,* 158 Pa Super 576, 45 A2d 913, the plaintiff was driving northerly and the defendant southerly. Plaintiff was driving about four miles per hour and attempted to make a left turn in front of defendant's car. Before turning he saw defendant's car at a distance of about 420 feet and at an ''undeterminable speed.'' Defendant was going 55 to 60 miles an hour. Verdict was for plaintiff. Judgment n.o.v. was entered for defendant and on appeal the judgment was affirmed. The court said:

''A plaintiff who turns his motor vehicle across the path of oncoming traffic is guilty of contributory negligence, unless the accident would not have occurred had not the defendant increased his speed after the plaintiff committed himself to the crossing. Cf. Hess v. Mumma, 144 Pa. Super. 313, 19 A.2d 524; Peters v. Shear, 351 Pa. 521, 41 A.2d 556. There is no evidence that defendant's speed was thus increased, nor can mathematical calculations supply that lack. In the present type of case the plaintiff may not relieve himself of contributory negligence by saying that he either misjudged the defendant's speed or formed no judgment at all, or that he *thought* it was safe to cross. An erroneous conclusion cannot be justified by an inadequate observation.''

In *Faber v. Herdliska,* 194 Minn 321, 260 NW 500, plaintiff was driving easterly. When he arrived at a

point near a private driveway leading north to his home he gave a signal, turned left, and collided with defendant's car which was approaching from the east. Plaintiff had an unobstructed view to the east. The cars were in full sight of each other when they were three blocks apart. Defendant was going twice as fast as plaintiff. On appeal the court held that plaintiff was guilty of contributory negligence as a matter of law. It said:

"* * * Here the circumstances alone show conclusively that Faber either failed to look for defendant's car, plainly visible, or ignored its proximity. It could be seen for nearly half a mile. It was coming at 40 miles an hour. The road, a broad, smooth, hard-surfaced trunk highway, was very slightly curved so that there was no chance of misapprehending defendant's speed. Faber was traveling at a slow rate, and must have had such control of his car that the slightest diligence on his part would avoid his running into defendant's car. This is a much more flagrant case of contributory negligence than was Sorenson v. Sanderson, 176 Minn. 299, 223 N.W. 145, where the collision occurred at a street intersection, not at a driveway."

In *Burton v. Billingsly,* Tex Civ App, 129 SW2d 439, the plaintiff, eastbound, made a left-hand turn in front of an oncoming westbound car at a point in the middle of the block. The trial court directed a verdict for the defendant which was affirmed on appeal. It was held that the question of the negligence of defendant was not material "except upon the question of discovered peril." Plaintiff first observed defendant's car when it was 276 yards distant and was going at a very high rate of speed. On reaching the point where he intended to make a sharp left turn he again observed defendant approaching at a distance of 130

to 150 feet. Plaintiff said defendant had not reduced his speed but was still traveling at a "terrific rate of speed." Plaintiff glanced in his rear-view mirror and then "paid no further attention" to defendant's car "because, he said, he though Cook [the defendant] surely would reduce his rate of speed before reaching him." The appellate court said:

> "* * * It is inescapable that appellant knew the collision would occur unless Cook reduced his rate of speed. He testified that if he had stopped his car when he saw Cook the second time, Cook might have gotten by and the collision would not have occurred. Instead of doing this, however, he proceeded across the north side of Columbia Avenue into the direct line of Cook's approach without even again looking to observe whether Cook had reduced his rate of speed or was making an effort to do so. The evidence is undisputed that there was no other traffic on the north side of Columbia Avenue except Cook's car. It is conclusive from the record that if appellant had stopped, which he testified he could have done within two or three seconds that would have been necessary for Cook to pass before attempting to cross the north side of the street, the collision would not have occurred.
>
> * * *
>
> "* * * We do not believe it could be said that any person who would approach and attempt to cross the north side of Columbia Avenue at the time and under the circumstances under which appellant attempted to do so was observing such conduct as would have been observed by a person of ordinary care and prudence under the same or similar circumstances. Upon this question, it seems to us, reasonable minds could not differ."

In *Lardeau v. Johnson,* 203 Wis 509, 234 NW 710, plaintiff was driving in an easterly and the defendant in a westerly direction. Plaintiff turned to the left to

go into a private yard. Each driver was aware of the other's approach. The plaintiff stopped on his right side of the road. He judged defendant's car to be about a block away and started to make the left turn when he was hit. Defendant saw no indication that plaintiff was going to turn into his pathway until he was ten or fifteen feet away. Verdict and judgment were for plaintiff, and defendant appealed. The Supreme Court said:

"The respondent seems to feel that his rights are to be analyzed from the viewpoint of one passing through an intersection of highways, and cites such cases as Werner v. Yellow Cab Co., 177 Wis. 592, 188 N.W. 77. The distinction between such case and this one is apparent. At highway crossings indications readily suggest to one approaching the likelihood of some one crossing his path. Here no one but respondent knew or had reason to suspect his intention to leave the right side of the road and enter into the pathway of the appellant.

\* \* \* \* \*

"Under the facts in this case, the trial court should have held as a matter of law that the respondent was guilty of negligence in failing to keep a proper lookout and in turning to the left to cross the line of travel of appellant's automobile. \* \* \*''

*Hoenig v. Kohl*, 182 Wash 245, 46 P2d 728, was an intersection case but the rule stated applies with greater force in cases involving a left turn into a private driveway. There was a verdict for plaintiff; judgment n.o.v. for defendant, and on appeal the judgment was affirmed. Plaintiff was driving west and defendant was driving south, both approaching the intersection. Defendant had the right-of-way. The court said:

"\* \* \* If the appellant looked, as it is said he did, then he saw, or was charged with the duty of seeing, the approaching car and was bound in law

to know that its rights in the intersection were superior to his own. Being the disfavored driver, it was incumbent upon him to yield the right of way unless the situation was such as to clearly indicate that he could cross with a fair margin of safety. In the light of the quoted testimony no reasonable mind can believe that the appellant exercised that care which the law required of him. The burden was upon the appellant to produce evidence of facts which would justify him in proceeding into the intersection. This, he did not do, and upon the uncontradicted testimony reasonable minds must agree that the appellant was guilty of contributory negligence in driving into the intersection under the conditions shown.''

■ We have cited cases indicating judicial knowledge of the dangers of left turns between intersections and holding that drivers making such turns must exercise ''extraordinary precautions,'' ''more than due care,'' a ''high degree of care'' and the like. In so doing it is not our intention to establish additional degrees of care as rules of law for the guidance of juries. When in *Black v. Stith,* supra, we said that such a driver is obliged to exercise ''a high degree of care'' we also said that the test is ''what would an ordinarily prudent person have done under the circumstances?'' This does not mean that the pronouncements quoted from the cases are to be ignored. Reasonable care means care commensurate with the apparent danger, *Peck v. Gerber,* 154 Or 126, 59 P2d 675, and the courts know that in these left turns into private property driveways the danger is great. We apply this knowledge in determining whether in the individual case the negligence of the driver should be determined as a matter of law or left to the decision of a jury.

■■ The case at bar lies near the borderline between

the class of cases in which the question of negligence is for the jury and the lesser class in which it is for the court to determine the issue as a matter of law. We find plaintiff guilty of contributory negligence as a matter of law, based upon his own testimony. Whether the plaintiff was or was not negligent is to be determined by applying the test of the reasonable man in like circumstances. Having the knowledge, and opportunity of knowledge, which the plaintiff had, the question is whether such reasonable man would have acted as plaintiff acted. The question cannot be decided by considering facts which were unknown to plaintiff unless they should have been known. In other words, the question is to be decided from the standpoint of the reasonable man if in the shoes of the plaintiff.

Here the plaintiff was charged with knowledge that the defendant had the right-of-way. He knew that he was turning left where there was no intersection, and should have known that the peril was greater by reason of that fact. He knew he was driving slowly in second gear, and in view of other testimony concerning defendant's speed he reasonably believed defendant's speed to be 70 or 75 miles an hour. He saw defendant when they were 350 to 400 feet apart. He advanced across the street in reliance upon the belief or hope that defendant who had the right-of-way would slow down. His idea drawn from his testimony quoted supra seems to have been that defendant could have dodged him by turning into the left-hand or westerly lane of travel which he said was unoccupied by any car coming from the north. The conclusion is unavoidable that he violated the mandate of the statute which provides that "The driver of any vehicle * * * before * * * turning from a direct line shall first see that such

movement can be made in safety.'' ORS 483.126. If the plaintiff gave a signal for a left turn the testimony of both himself and his wife indicates that the arm signal was given as he was turning into his left-hand lane. In that event the signal would be plainly visible to cars, if any, behind him, but would be of doubtful visibility to a driver approaching from the south. The fact that the defendant was driving at a high, and even negligent, speed, did not excuse plaintiff, who knew and appreciated that fact, and proceeded in spite of it.

Judgment for plaintiff is reversed.