Keith E. Swigert, Plaintiff-Appellee, v. James P. Hawkins and Charles R. Bennett, Jr., Defendants-Appellants.

Gen. No. 10,431.

Third District.

February 26, 1963.

LeForgee, Samuels, Miller, Schroeder & Jackson, and Vail, Mills, Armstrong, Winters & Prince, all of Decatur (Carl R. Miller and Jerald E. Jackson, of counsel), for appellants.

Garman, Greanias & Owen, of Decatur, for appellee.

ROETH, JUSTICE.

On May 12, 1960, at approximately 5:00 p. m. the plaintiff, Keith E. Swigert, was proceeding in a northerly direction along Highway 51 approximately two miles north of Decatur, Illinois. He was driving a 1960 Pontiac convertible which he had owned approximately three weeks. He was accompanied by one William Harris. The sole purpose of the drive was to give Harris the opportunity to observe the newly acquired auto. The day was clear and the pavement was dry. Hickory Point Road, an east and west highway, intersects Route 51. At a point south of the intersection of Hickory Point Road and Route 51, Swigert decided to return to Decatur, Illinois. Swigert elected to turn into a lane at the residence of a Nolan family. The intersection of Hickory Point Road and Route 51 is approximately 175 feet north of the Nolan driveway. The intersection of Hickory Point Road and Route 51 is located at or near the crest of a hill. The driveway is located on the west side of the road and was on Swigert's left. To turn into the driveway it was necessary for Swigert to cross the southbound lane of Route 51. Swigert testified that at the point of the intersection of Route 51 and the driveway in question, one could see 250 feet north of the crest of the hill. As Swigert proceeded on Route 51 he was followed by a John W. Earl in a 1959 white Chrysler New Yorker. The Earl auto was five or six car lengths behind Swigert as Swigert approached the driveway of the Nolan home.

183

The testimony is conflicting as to the events that occurred, but suffice it to say that as Swigert attempted to cross the southbound lane of Route 51 and turn into the Nolan driveway, a 1959 blue 2-door Pontiac driven by the defendant Bennett, traveling south on Route 51, came over the crest of the hill and struck the Swigert car. Moments later a 1958 black 2-door Pontiac driven by defendant Hawkins, also traveling south in the southbound lane of Route 51, struck the Swigert auto.

The case was tried before a jury and resulted in a verdict for William O. Harris and Keith Swigert against the defendants, James P. Hawkins and Charles R. Bennett. No appeal was taken in regard to the Harris verdict. The post trial motions of defendants for a judgment notwithstanding the verdict, or, in the alternative, for a new trial, were denied and this appeal in regard to the Swigert judgment followed.

On appeal defendants contend (1) that the plaintiff, Swigert, was guilty of contributory negligence as a matter of law and (2) that the trial court erred in failing to give defendants' instructions concerning alleged statutory violations by plaintiff.

██ ██ Certain basic rules govern our determination of the question presented on appeal from an order denying defendants' motion for a judgment notwithstanding the verdict. We may not weigh the evidence or attempt to reconcile any conflict in the evidence. We must determine whether there is any competent evidence, standing alone, together with all reasonable inferences to be drawn therefrom and taken with intendments most favorable to plaintiff, which tends to prove material elements of plaintiff's case. This rule is so well established that citation of authority is unnecessary.

William O. Harris, who was riding in the Swigert automobile, testified that when Swigert started to turn into the driveway, he slowed to 5 to 10 miles an hour;

that he (Harris) was facing north; that he had a clear view of the crest of the hill in the area of Hickory Point Road; that at that time he did not see any vehicle either going north on Route 51 or coming south on Route 51; that there were no cars in sight at the time the turn was initiated. Further Harris testified that when Swigert was actually in the turn, his speed was 5 to 10 miles per hour and that he, Harris, saw another vehicle coming over the hill; that at the time Harris saw the oncoming vehicle Swigert had already turned his auto and started the turn.

Mr. John W. Earl, driver of the car immediately behind the Swigert vehicle, testified that when the Swigert vehicle started to turn into the driveway, there were not, to his knowledge, any vehicles visible coming from the north; that when he first saw the oncoming automobiles, the Swigert car was some distance into the turn; that he believed that when he saw the first oncoming automobile he, Earl, could have proceeded north in the northbound lane.

Swigert also testified that as he started the turn he noticed the automobile behind him slow down, that there was nothing in sight to the north and as he was making the turn he saw a vehicle coming from the north, and that the left front of his automobile was approximately across the line when he saw the oncoming automobiles. He also testified that he signalled his intention to turn at a point about a quarter of a mile south of the driveway by hand signal and turn indicators.

■ ■ Failure to exhibit due care is not shown by an election to turn at a particular place or point, but rather, once having so elected, was the turn made with due care in the light of existing conditions? This determination is one to be made by a jury.

■ The evidence relating to the due care of Swigert hinges on two questions: (1) How far committed to a turn was Swigert when he first was able to see

185

the automobile of Bennett? (2) What was the speed of the Bennett and Hawkins automobiles? As previously pointed out in this opinion, the testimony of Swigert, Harris and Earl all indicated in varying degrees that Swigert had started to make a left hand turn before he saw the oncoming vehicles. Whether he was far enough committed to make a left hand turn, or whether he should have tried to stop to allow the southbound automobiles to try to get by on the west was a question of fact for the jury. Secondly, the speed of the Bennett and Hawkins automobiles was an important consideration in determining the reasonableness of plaintiff's action.

The testimony relating to the speed of the defendants, Bennett and Hawkins, was conflicting. Bennett testified he did not recall his speed. Hawkins testified he was driving 60 miles an hour at the crest of the hill in question. Swigert stated he felt the automobile of Bennett was traveling in excess of 100 miles per hour. William O. Harris testified, "I would say the blue Pontiac came over the hill well over 100 miles an hour." John W. Earl, in the automobile behind Swigert, testified the speed of the blue Pontiac seemed to be exceedingly fast. A bus driver for Illinois Highway Lines, driving south on Route 51, testified that two Pontiac automobiles passed him about a mile from the scene of the collision and that they were traveling between 85 and 100 miles per hour when they passed him and in the 90 mile per hour range when they reached the crest of the hill at the Hickory Point Road. The driver of a semitrailer truck ahead of the bus testified that when the two Pontiac automobiles passed him their speed was 50 miles per hour.

Also bearing upon speed, a Mr. Vogel, who operated Vogel's Auto Body Shop in Decatur, testified that when he arrived at the scene the 1960 Pontiac convertible belonging to plaintiff was located right in the

186

center of the highway facing northwest about 30 feet south of the driveway. Pictures show that it was folded up in the middle like an accordion. The blue 1959 Pontiac was south of the convertible about three telephone poles. It was against the telephone pole and into the pole approximately 18 inches. The black Pontiac was behind and to the south of the convertible, heading a little more northwest than the convertible. It was about two car lengths south of the convertible. The Chrysler was south of the black Pontiac about eight feet headed directly north on the east side of the highway.

Counsel for defendants concede that no question is raised on this appeal as to whether the defendants or either of them were negligent. However, counsel for defendants contend that plaintiff was guilty of contributory negligence as a matter of law and rely most strongly on Fisher v. Reilly, 207 Ore 7, 294 P2d 615. Despite the statement in the opinion as follows:

> "We have cited cases indicating judicial knowledge of the dangers of left turns between intersections and holding that drivers making such turns must exercise 'extraordinary precautions,' 'more than due care,' a 'high degree of care' and the like. In so doing it is not our intention to establish additional degrees of care as rules of law for the guidance of juries. When in Black v. Stith, supra (164 Or 117, 100 P2d 487), we said that such a driver is obliged to exercise 'a high degree of care' we also said that the test is 'what would an ordinarily prudent person have done under the same circumstances?'"

it is apparent that the court was judging the conduct of the motorist by a higher degree of care than required under the decisions of our courts of review. More important, however, is the fact that in the above

187

case the finding of contributory negligence as a matter of law was predicated on *plaintiff's own testimony* to the effect that he, the plaintiff, about to make a left turn, saw defendant's car approaching from the opposite direction at a high rate of speed in defendant's own lane of traffic, *before* he crossed into the lane of travel of defendant's car.

Secondly, a reading of the other citations involving left hand turns indicates that in each instance the person making the left hand turn saw an oncoming car prior to the driver's decision to make the turn. This is not the case before us. The foregoing testimony both as to the position of the Swigert automobile when the defendants came over the crest of the hill and the speed of the defendants' vehicles raised a question of fact for the jury.

Counsel for defendants also contend the trial court erroneously refused to give defendant Hawkins' instructions 7 and 8 and defendant Bennett's instructions 10 and 9. Hawkins' 7 and Bennett's 10 are the same, and Hawkins' 8 and Bennett's 9 are the same.

Hawkins' instruction 7 and Bennett's instruction 10 are each as follows:

"There was in force in the State of Illinois at the time of the occurrence in question a certain Statute which provided that:

" 'No vehicle shall be turned so as to proceed in the opposite direction upon any curve, or upon the approach to, or near the crest of a grade, where such vehicle can not be seen by the driver of any other vehicle approaching from either direction within 500 feet.'

"If you decide that the parties violated the statute on the occasion in question, then you may consider that fact together with all the other facts and circumstances in evidence in determining

188

whether or not the parties were negligent before and at the time of the occurrence."

This is the statutory provision relating to a so-called U-turn and is not applicable to the facts of the case. ■ Hawkins' instruction 8 and Bennett's instruction 9 are as follows:

> "There was in force in the State of Illinois at the time of the occurrence in question a certain Statute which provided that:
> " 'No vehicle shall, in overtaking and passing another vehicle, or at any other time, be driven to the left side of the roadway under the following conditions:
> " 'When approaching the crest of a grade or upon a curve in the highway where the driver's view is obstructed within such distance as to create a hazard in the event another vehicle might approach from the opposite direction.'

> "If you decide that the parties violated the statute on the occasion in question, then you may consider that fact together with all the other facts and circumstances in evidence in determining whether or not the parties were negligent before and at the time of the occurrence."

This statutory provision is the provision commonly known as the "passing statute" and is not applicable to the factual situation before us. ■ In the light of the facts, we believe the trial court ruled correctly in denying the above instructions and in giving Hawkins' instruction no. 9, which reads as follows:

> "There was in force in the State of Illinois at the time of the occurrence in question a certain statute which provided that:

189

" 'No person shall turn a vehicle from a direct course upon a highway unless and until such movement can be made with reasonable safety and then only after giving a clearly audible signal by sounding the horn if any pedestrian may be affected by such movement or after giving an appropriate signal in the manner hereinafter provided in the event any other vehicle may be affected by such movement.

" 'A signal of intention to turn right or left shall be given during not less than the last 100 feet traveled by the vehicle before turning.'

"If you decide that the parties violated the statute on the occasion in question, then you may consider that fact together with all the other facts and circumstances in evidence in determining whether or not the parties were negligent before and at the time of the occurrence."

We are of the opinion that the contentions of counsel for defendants are without merit and that the post trial motions were properly denied.

Accordingly the judgment of the Circuit Court of Macon County will be affirmed.

Affirmed.

REYNOLDS, P. J. and CARROLL, J., concur.