[No. 38601. En Banc. September 21, 1967.]

CLEMENT J. NIVEN et al., *Plaintiffs*, v. JOHN MACDONALD et al., *Defendants*.

ERVIN LUDWICK et al., *Appellants*, v. JOHN MACDONALD et al., *Respondents*.*

*Ferguson & Burdell*, by *W. Wesselhoeft*, and *Charles T. Cole*, for appellants Ludwick.

*Broz, Long & Mikkelborg, Robert O. Wells, Jr.*, and *Richard F. Broz*, for respondents Niven.

*Anderson & Hunter, J. P. Hunter*, and *Julian C. Dewell*, for respondents MacDonald.

HILL, J.—Two cases arising out of an automobile accident were consolidated for trial. Pending the hearing before this

*Reported in 431 P.2d 724.

court on appeal, the Niven v. MacDonald and Ludwick[1] action was settled and the appeal dismissed. Therefore, we are concerned only with the action between the plaintiffs-appellants (Mr. and Mrs. Ervin Ludwick) and the defendants-respondents (Mr. and Mrs. John MacDonald). The drivers of the respective vehicles involved in the accident were Mrs. Ludwick and Mr. MacDonald, and they will be referred to herein as though they were the only parties to the action.

Mr. MacDonald undertook to pass a column of four cars traveling east on a 2-lane highway. Mrs. Ludwick's auto was the leading car in the column. As she undertook to make a left turn into a private driveway, her car was struck by the MacDonald vehicle. A drawing of the accident scene is reproduced here for illustrative purposes.

Mrs. Ludwick instituted this action to recover for personal injuries and property damage sustained as a result of the collision. At the close of the plaintiff's case, the trial court dismissed the action, holding that she was contributorily negligent as a matter of law and that such negligence was a proximate cause of the accident. The plaintiff has appealed, and the only issue is whether she was contributorily negligent as a matter of law.

The trial court based its ruling upon two statutory violations: RCW 46.60.040 (now codified under 46.61.110), and RCW 46.60.120 (4) (a) (now codified under 46.61.305 (1)). The latter provides that:

> No person shall turn a vehicle . . . to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety.

The plaintiff testified that she signalled to make a left turn into a private driveway and her signals were seen by

---

[1]The Nivens were passengers in the MacDonald car, suing both parties to this appeal.

X = POINT OF IMPACT
(EX. 8, 10, 12 ½ ST. 21, 30)

LUDWICK CAR

WALLY'S DRIVE-IN

LUMBER YARD DRIVE
(ST. 378)

SKID MARKS
108-112' (EX. 8, ST. 21)

100' (ST. 84)

LUKEHART CAR

MACDONALD CAR
BEFORE SKID

2 or 3
CAR LENGTHS
(ST. 2127)

BALL CAR

100'
(ST. 391-392)

MACDONALD CAR —
200-300 FEET WEST
WHEN LUDWICK TURN
BEGAN
(ST. 114, 115)

4TH CAR

MACDONALD CAR

E

N

W

S

1.8 MILES
(ST. 56)

TERRY'S CORNER

1,392' (ST. 373)
3/10 MILE (ST. 37)

WEST RIM PLATEAU

ACCIDENT SITE

the drivers of the two cars immediately behind her. She further stated:

> A. . . . And I began to slow down, and I looked ahead and saw there were no cars coming from ahead of us, and then I looked in my rear view mirror and I saw there was a car behind me, a safe distance behind me, so I knew he was all right, and then just before I was going to turn — I slowed down to about, oh, between five and ten miles an hour to make the turn because it is a real sharp turn, and then I looked in my rear view mirror and I didn't see any cars behind me, and so I just went ahead into the turn. . . . Q. You looked forward to see that the highway was clear? A. Yes. Q. Looked in your rear vision mirror? A. Yes. Q. Before you did that you saw a car behind you? A. Yes. Then I looked back again in the rear view mirror on the side of the car. Q. The side rear view mirror? A. Yes. Q. And you didn't see any cars approaching? A. I didn't see any car, no.
>
> . . . .
>
> Q. Do you have a specific recollection of looking into your side view mirror? A. Right before I went in to the turn, yes, sir.
>
> . . . .
>
> Q. . . . Can you give us an estimate of how much time elapsed between when you looked in your side view mirror and when you actually commenced your turn? A. Well, it's hard to say, but I am sure it was at least two seconds up to probably about five seconds, but it is hard to say. Seconds are kind of hard to estimate.

It is the plaintiff's position that her conduct met the required standard of care (reasonable safety) imposed upon her by RCW 46.60.120, and on appeal it is urged that what constituted reasonable safety was a question for the jury, not the trial court, to decide.

In making its determination the trial court stated:

> Now, when does the law require her to make that last look? Is it seven seconds before she turned? I appreciate that counsel's illustration is that if she had looked she would not have been able to see this automobile; but if it was five seconds before she looked, she would have been able to see the automobile, because it was there to be seen, there isn't any doubt about that. If she had looked

immediately prior to her making this turn, she would have seen an overtaking vehicle. And if she had seen the overtaking vehicle, then according to 46.60.040 she was required to keep on the extreme right hand of the public highway until such vehicle had passed her. She did not do that. She attempted to make a turn, because she was not aware of this overtaking vehicle.

. . . .

We do have a general criterion statute, counsel, that tells us we are under an obligation to keep a lookout in driving an automobile, and I think that that simply means this: that you have got to keep the kind of a look-out that is required when a certain situation presents itself, and I say when you are slowing down to five or ten miles an hour and you are going to make a left hand turn in a private driveway, you had better look if it is three seconds, two seconds, or one second before you make the turn.

■ Plaintiff cites *Kaufman v. Sickman,* 116 Wash. 672, 200 Pac. 481 (1921), and *Burns v. Standring,* 148 Wash. 291, 268 Pac. 866 (1928), in support of her contention that her alleged contributory negligence was a question of fact for the jury. The statutory restriction upon the left-turning driver, with which we are here concerned, was not enacted until some 25 years after the *Burns* decision. See Laws of 1953, ch. 248, p. 616. The cases relied upon by the plaintiff are not apposite to the question here presented as to whether her conduct measured up to the statutory requirement of "reasonable safety" in the light of present-day traffic conditions and speeds.

Apart from statutes, the courts generally recognize the dangers frequently present in undertaking to make a left turn between intersections to enter a private driveway. 2 Blashfield, Cyclopedia of Automobile Law and Practice, § 1170.

The cases holding that a statute such as ours imposes an obligation on the left-turning driver to look to the rear before he turns, whether at an intersection or to enter a private road or driveway, are legion. A comprehensive re-

view of cases involving left turns between intersections will be found in *Fisher v. Reilly*, 207 Ore. 7, 294 P.2d 615 (1956).

A Nebraska decision involving a situation very much like the present case is typical. The court held that a driver was negligent, as a matter of law, in turning left across a highway between intersections without making a proper observation of traffic approaching from the rear. The following quotation from the opinion makes clear that the giving of the left-turn signal is not enough to meet the requirements of the statute.

The most dangerous movement on public streets or highways is the left-hand turn. While the left-hand turn at intersections is within the purview of this statement, the left-hand turn across a favored public highway between intersections is a particularly dangerous one. Legislatures have seen fit to regulate such movements and courts have required a degree of care commensurate with the danger. The language of our statute states that no person shall turn a vehicle from the direct course upon a highway unless such movement can be made with reasonable safety, and then only after giving the statutory signal. In other words, the giving of the statutory signal is not enough, one must exercise reasonable care under all the circumstances. He cannot rely on holding out his arm and trust that all may see it. He must take reasonable precautions for his own safety and the safety of others before he undertakes a left turn between intersections where such movements are not anticipated. . . .

. . . .

One must look at a time when possible danger could be observed. The observations must be made immediately before the impending movement; otherwise, as in this case, the observation would be completely ineffective for the accomplishment of the purpose intended. . . .

. . . .

We think the correct rule to be applied in cases of this kind is: Where the driver of a vehicle turning across a street or highway between intersections fails to look at all at a time and place where to look would be effective, or looks and negligently fails to see that which is plainly

in sight, or is in a position where he cannot see, a question for the court is usually presented. (*Petersen v. Schneider*, 153 Neb. 815, 819, 820, 822, 46 N.W.2d 355 (1951))

There was substantial uncontroverted evidence to support the trial court's statement that had the plaintiff "looked immediately prior to her making this turn, she would have seen an overtaking vehicle." The MacDonald car was in the passing lane continuously while passing the three cars which were following the plaintiff. The plaintiff had a clear and unobstructed view of the westbound lane behind her (the passing lane) for a quarter of a mile. The drivers of two of the following cars saw and heard the oncoming MacDonald car prior to the collision. The Mac-Donald car skidded in the passing lane for 109 to 112 feet before striking the rear portion of the plaintiff's car. Nothing occurred to confuse, deceive, or distract the plaintiff.

■ We have made it clear that whether a driver is favored or disfavored, he has a duty to look out for approaching traffic. Whether or not he actually looks or sees what was there, he is charged with seeing what was there to be seen. *Chess v. Reynolds*, 189 Wash. 547, 66 P.2d 297 (1937). In *Owens v. Kuro*, 56 Wn.2d 564, 572, 354 P.2d 696 (1960), we cited the *Chess* case and applied it to the facts then before us, saying:

He turned directly into the path of an oncoming car which he should have seen. Such constitutes negligence as a matter of law. (p. 572)

We there pointed out that negligence of the driver of the "oncoming car" in being where he was, could not affect the negligence of the driver who turns directly into the path of the "oncoming car."

■ In the instant case, the plaintiff was making what the Nebraska court labeled "a particularly dangerous" move—a left turn between intersections into a private driveway. Reasonable minds cannot differ on the proposi-

tion that had the plaintiff looked for possible traffic in the passing lane immediately before she started her left turn across it, she would have seen the oncoming MacDonald car which necessarily was in that lane an appreciable time before the plaintiff started her left turn. This is not a case of seeing the approaching car. Either she looked so long before she began her turn that the look was completely ineffective for the purpose intended, or she did not see what was there to be seen.

The judgment of dismissal is affirmed.

FINLEY, C. J., WEAVER, ROSELLINI, HUNTER, HAMILTON, and HALE, JJ., concur.

DONWORTH, J. (dissenting)—I cannot reconcile the holding of this case with the law as set forth in the very recent case of *Anderson v. Beagle*, 71 Wn.2d 641, 430 P.2d 539 (1967), wherein this court held that the trial court was in error when it instructed the jury that a driver turning left into a private driveway was required to exercise an "extraordinary" degree of care. A more extraordinary degree of care than that required by the majority in this case could hardly be imagined. I, therefore, dissent.

RCW 46.60.120(4)(a) provides, in part, that:

> No person shall turn a vehicle . . . to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with *reasonable* safety. (Italics mine.)

This is the standard, and was correctly interpreted in the *Anderson* case, *supra*, to require of the turning driver such care as a reasonably prudent or ordinarily prudent man would exercise under the circumstances.

But the rule stated by the majority is that the turning driver must look to the rear "immediately" before commencing her turn. Appellant having failed to do this, the majority conclude that she was guilty of contributory negligence *as a matter of law:*

Either she looked so long before she began her turn that the look was completely ineffective for the purpose intended, or she did not see what was there to be seen.

Thus, appellant is barred from recovery even though the evidence is not such as to establish conclusively that, even had she looked "immediately" before commencing her turn, she could have seen respondent's speeding vehicle.

This court has consistently held that only in the clearest of cases should the court determine that contributory negligence exists as a matter of law. *O'Brien v. Seattle,* 52 Wn.2d 543, 327 P.2d 433 (1958); *Boley v. Larson,* 62 Wn.2d 959, 385 P.2d 326 (1963); *Allen v. Fish,* 64 Wn.2d 665, 393 P.2d 621 (1964).

From the time respondent commenced his passing to the time of impact, there elapsed only about three seconds. Appellant testified that from the time she commenced her turn until the point of impact about four to six seconds elapsed. Thus the jury could have found from the evidence that, even had she looked "immediately" before commencing her turn, nothing was there to be seen.

In addition, even though appellant is the "favored" driver,[2]

---

[2]This court has consistently held, in cases involving collisions between automobiles proceeding in the same direction on the highway, that the primary duty of avoiding a collision rests on the overtaking vehicle. *Tackett v. Milburn,* 36 Wn.2d 349, 218 P.2d 298 (1950); *Miller v. Cody,* 41 Wn.2d 775, 252 P.2d 303 (1953); *Izett v. Walker,* 67 Wn.2d 903, 410 P.2d 802 (1966); *Felder v. Tacoma,* 68 Wn.2d 726, 415 P.2d 496 (1966). I do not feel that the metamorphosis of changing status from a "following" car to a "passing" car includes a shedding of all disabilities vis-a-vis the car ahead.

I further note that the only duty required of the turning driver, under Laws of 1965, Ex. Ses., ch. 155, § 29 (RCW 46.61.185), is as follows: "The driver of a vehicle intending to turn to the left within an intersection or into an alley, private road, or driveway *shall yield the right of way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard.*" (Italics mine.) Thus, the duty to yield relates to the driver approaching from the opposite direction, not the overtaking vehicle.

she is, in effect, held to an absolute duty to see the reckless violation[3] of her right by an overtaking vehicle, and is barred from recovery by her failure to avoid a collision.

Such a holding, in my view, does not correspond with the standard of care required of the turning driver as set forth in *Anderson v. Beagle, supra,* or with the facts of the present case.

I would hold, therefore, that the question of contributory negligence on the part of appellant should have gone to the jury under an instruction consistent with the standard of care as set forth in *Anderson v. Beagle, supra.*

Hence, I would remand the case for a new trial.

---

[3]There was testimony that the MacDonald car was traveling at a speed of 55 to 60 miles per hour as it approached the column of cars and that, as MacDonald commenced to pass, there was a sudden surge of power as the car accelerated to 70 or more miles per hour. The MacDonald car skidded a distance of 110 to 112 feet. It was stipulated that a car skidding 110 feet will decrease in speed by 47 miles per hour. Nevertheless, the force of the impact was sufficient to severely damage both cars and injure the passengers. It was also stipulated that MacDonald did not blow his horn, as required by RCW 46.60.040.